IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY DALE CROUCH, | ) | |
| RHONDA MAE CROUCH, | ) | |
| TEDDY LEE HUDSON, and | ) | |
| CAROLYN SUE HUDSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-00072-KD-N |
| | ) | |
| TELEDYNE CONTINENTAL MOTORS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on the motion for partial summary judgment filed by defendant Teledyne Continental Motors, Inc. (TCM) and supporting documents (doc. 67-69), the response and supporting documents filed by Plaintiffs Larry Dale Crouch, Rhonda Mae Crouch, Teddy Lee Hudson, and Carolyn Sue Hudson (Plaintiffs) (doc. 85), and TCM's reply (doc. 95). Upon consideration and for the reasons set forth herein, the motion is **denied in part and otherwise carried to trial**. [1] [2]

---

[1] Plaintiffs move the Court pursuant to Local Rule 7.3, which provides that "[a]ny party may request oral argument on any motion. However, the court may in its discretion rule on any motion without oral argument." S.D. Ala. LR. 7.3. Upon consideration of TCM's motion, brief in support, exhibits, and reply, and review of the Plaintiffs' response and exhibits, the Court finds that that the parties' arguments are adequately briefed and oral argument will not assist the Court in reaching a decision on TCM's motion. Plaintiffs' motion for oral argument on the motion for partial summary judgment is **denied**. (doc. 87).

[2] Plaintiffs' motion for leave to file a surreply (doc. 97) is **denied**. Upon consideration of TCM's motion, brief in support, exhibits, and reply, and review of Plaintiffs' response and exhibits, the Court finds that the parties' arguments are adequately briefed and a surreply is not necessary for the Court to reach a decision on TCM's motion. Because the Court has denied Plaintiffs' motion for leave to file a surreply, TCM's motion to strike the surreply (doc. 111) is **moot.**

1

I. Factual background [3]

On November 21, 2006, Larry Crouch was piloting his Piper PA-32RT-300 Lance II Cherokee single-engine plane from Mayfield, Kentucky to Frankfort, Kentucky. Teddy Hudson was his passenger. The plane was equipped with a Lycoming IO-540-K1G5D engine and a TCM magneto. The plane crashed near Bardstown, Kentucky.

Analysis of the data obtained from the engine analyzer, which recorded engine data every six minutes, indicated that the plane's engine stopped producing power at a point between 12:03 p.m. and 12:10 p.m. Radio transmission with Air Traffic Control at Louisville-Standiford Airport, ended at approximately 12:12:31 p.m., the approximate time of the crash. The plane did not make it to Bardstown Airport and crash landed at another nearby airstrip. Crouch and Hudson were injured and are now paraplegic.

In regard to the loss of power to the engine, Plaintiffs assert that "the magneto's mounting

---

[3] TCM objects to plaintiffs' submission of the expert witness reports of William D. Carden, James Hall, Robert L. Pearce, Bernard J. Coogan, Mark Seader, Richard Wartman, and Robert Caudle as evidence in support of plaintiffs' response (docs. 96, 110). TCM argues that the reports are unsworn statements and thus are hearsay which the Court may not consider. Plaintiffs respond by filing sworn statements by each expert verifying their opinions in their reports and argue that they have cured any lack of a sworn statement (doc. 104, 105). Plaintiffs also argue that because the experts have not all been deposed (TCM's motion for partial summary judgment was filed before the deadline for expert disclosures and hence before the experts were deposed), the experts can also verify at deposition the facts and opinions expressed in their reports (doc. 105).

Upon consideration, TCM's objection (docs. 96, 110) is **overruled**. Rule 56(c)(2) states as follows: "Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). TCM does not argue that the expert reports "cannot be presented in a form that would be admissible in evidence." TCM argues that the reports were unsworn. District courts can rely on evidence which can be "reduced to admissible evidence at trial and reduced to admissible form." Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). The expert opinions have now been verified by sworn statements and the experts are scheduled for deposition as to their respective opinions. Thus, it appears that the opinions expressed in the expert reports are capable of being reduced to admissible evidence. (The Court notes that *Daubert* motions have not yet been filed.)

flanges broke which caused the magneto to fall off" or "twist off" during flight and that caused the engine to lose power (doc. 85, p. 4, 7). Plaintiffs assert that the "flanges broke due to hidden fatigue fractures that had been developing for some time" (*Id.*). Plaintiffs propose two primary causes for the flanges breaking. First, the flange was poorly designed by TCM and did not include a "margin of error on the part of the installer" and second, the use of an authorized but defective gasket "in combination with clamps which were not recommended for this type of magneto aggravated the weakness of the magneto design and contributed to the failure of the magneto flange." (*Id.*, p. 6).

As evidentiary support, Plaintiffs rely upon their expert witness reports expressing and supporting plaintiffs' theory that the magneto separated during flight which caused the loss of engine power (docs. 85-1 through 14, Exhibits A-D; doc. 85-17 through 19, Exhibits G-H) and the data from the engine analyzer (doc. 85-27; doc. 85-12, p. 7-9, conclusions of James Hall, Former Chairman of the National Transportation Safety Board (NTSB)). Plaintiffs also rely, *inter alia,* upon the following: The Air Traffic Control transcript (doc. 68-6); TCM's 2009 letter to the Federal Aviation Administration (FAA) discussing the fracture of the magneto flange; the NTSB report of Crouch and Hudson's crash (doc. 85-23, Exhibit K); the expert witness's reference to the August 2003 NTSB report of the September 25, 2001 incident involving the separation of the same type of magneto from the same type of Lycoming engine in a Piper aircraft (doc. 85-2, p. 6, Exhibit A, Carden report); two investigative reports received by TCM in October 2004 and January 2005 relating to the September 25, 2001 incident and advising of the potential for magneto flange failure (doc. 85-31, Exhibit S; doc. 85-32, Exhibit T); Lycoming Service Instructions from 2002 and 2003 (doc. 85-16, Exhibit F) (instructions for attaching magnetos to the engines of Mooney and Cessna Cardinal aircraft but with a different type of Lycoming engine); the expert witness's reference to the August 2006 NTSB report related to the March 1, 2006 incident where the same type of magneto

3

separated from a different type of engine in a Mooney aircraft (doc. 85-2, p. 6, Exhibit A, Carden report);[4] the testimony of a TCM employee as to knowledge of more than ten cases where the magneto separated from the engine (doc. 85-34); and the testimony of Crouch and Hudson (doc. 85-21, 22, and 24, Exhibits I, J, L).

TCM asserts that Crouch thought there was an engine fire and then <u>he</u> shut off the fuel supply to the engine during flight which caused the engine to lose power. TCM asserts that the magneto did not twist off or separate during flight but instead broke off the engine on impact of the crash.

As evidentiary support, TCM relies upon the affidavit of John S. Barton (retired Senior Vice President of Engineering and Technology for TCM, doc. 68-1) and the exhibits attached: The FAA accident investigator's notes regarding the fire in the engine as proof there was a fire in flight (doc. 68-3, NTSB docket, p. B-14, 18); Pilot Operating Handbook instructions that the pilot should cut off the fuel to the engine when there is an engine fire (doc. 68-7); deposition testimony of Hudson as to when he saw or smelled smoke and told Crouch (doc. 68-5); the Air Traffic Control transcript of communications with Crouch (doc. 68-6); deposition testimony of George Durham regarding his conversation with Crouch after the accident wherein Durham states that Crouch told him that he cut off the engine and tried a re-start (doc. 68-8); engine analyzer report showing the time period where engine power was lost (doc. 68-3, NTSB docket, p. B-3, B-5); and the NTSB docket indicating the FAA investigator's conclusion that the magneto broke off "in what appears to be impact damage." (doc. 68-3, p. B-15).

---

[4] Plaintiffs also rely upon the Lycoming Service Instructions from 2007 (doc. 85-30, Exhibit R). The Court notes that this Service Instruction was issued after Crouch and Hudson's crash but explains that past reports of magneto separation had been made.

II. Summary Judgment Standard [5]

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to

---

[5] The Court **denies** TCM's request that it enter an order pursuant to Rule 56(g) of the Federal Rules of Civil Procedure to designate certain facts as established in this case. Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment

purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

   III.  Analysis

As an initial consideration, the parties do not dispute that the applicable law under the Alabama choice of law provision is the law of the State of Kentucky where the crash occurred.

   A.  Punitive damages for out-of-state conduct under Kentucky law.

Relying upon *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408 (2003) and *Sand Hill Energy, Inc. v. Smith,* 142 S.W.3d 153 (Ky. 2004), TCM argues that punitive damages may not be awarded under Kentucky law because all of its conduct, lawful or unlawful, "in connection with the design, manufacture, inspection and testing" of the magneto occurred outside of Kentucky. Specifically, TCM cites to the extraterritorial limitations on punitive damages discussed in *State Farm* which explains that a "State cannot punish a defendant for conduct that may have been lawful where it occurred," 538 U.S. at 421, and that "[n]or, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." 538 U.S. at 421 (doc. 68 p. 14-15). TCM concludes that since it "committed no acts - - wrongful or otherwise - - [within Kentucky] no punitive damages may be awarded against TCM under Kentucky law" (doc. 68, p. 15), and that imposition of punitive damages against it for extraterritorial acts would violate the Fourteenth Amendment of the United States Constitution (doc. 95, p. 6, 9).

Neither *State Farm* nor *Sand Hill* supports TCM's conclusion that because all of its "conduct" occurred outside of Kentucky, punitive damages may not be awarded against it. In *State Farm*, the Supreme Court limited the availability of punitive damages based upon principles of due process and held: 1) That lawful out-of-state conduct may not be used to punish a defendant; and 2) That unlawful acts committed out of state related to <u>other persons</u> may not be used to punish a

7

defendant. *State Farm*, 538 U.S. at 422–423. In the action before this Court, the alleged out-of-state conduct (*inter alia*, that TCM knew of the problems associated with the allegedly defectively designed magneto and its susceptibility to separate from the engine during flight but failed to correct or warn about this problem) does not constitute lawful out-of-state conduct or conduct related to other persons. If Plaintiffs' allegations are proven, this alleged out-of-state conduct resulted in injury to the Plaintiffs.

TCM focuses upon the phrase "defendant's action in the state where it is tortious" to argue that "*Sand Hill* clearly stands for the proposition that no punitive damages can be awarded unless there is some tortious activity within the State of Kentucky" and that since TCM conducted no activity in Kentucky - tortious or otherwise - unlawful or lawful - no punitive damages may be awarded against it (doc. 95, p. 9). To follow this rationale, a claim for punitive damages based on gross negligence could only be brought if the allegedly defective product was designed, manufactured, and distributed in the same state where the injury occurred. Nothing in *State Farm* or *Sand Hill* indicates that this exoneration from tortious conduct is the intended result of these decisions.

The Supreme Court of Kentucky explained in *Sand Hill* that the reason for the holding of *State Farm* was because "the conduct upon which the punitive damages award was based bore no relation to the plaintiffs' harm, which resulted in the 'case ... [being] used as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country,' instead of being used to condemn State Farm for its conduct towards the plaintiffs." *Sand Hill,* 142 S.W. 3d at 156. Thus, the "conduct of a defendant outside the State of Kentucky" that is not allowed to be considered for purposes of a punitive damages award is conduct that bears no relation to the plaintiff's harm.

Also, in *Hyman & Armstrong, P.S.C. v. Gunderson,* the Supreme Court of Kentucky explained as follows:

> In 2003, the United States Supreme Court rendered its decision in *State Farm Mutual Automobile Insurance Company v. Campbell,* 538 U.S. 408, 422–23, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), wherein it held that under the due process clause, out-of-state conduct of a defendant regarding a non-party cannot be used to award punitive damages. While the Court allowed consideration of out-of-state conduct in assessing the reprehensibility of the defendant's conduct, the Court stated that the out-of-state conduct "must have a nexus to the specific harm suffered by the plaintiff." *Id.* at 422, 123 S.Ct. 1513.

*Hyman & Armstrong, P.S.C. v. Gunderson,* 279 S.W.3d 93, 121 (Ky. 2008). Again, it is only out-of-state conduct directed at a non-party that is not allowed to be considered.

In the action before this Court, even if TCM did not conduct any activity in Kentucky there is still a "sufficient nexus" (assuming Plaintiffs prove their allegations) between its alleged out-of-state conduct and the harm which came to Plaintiffs. Specifically, Plaintiffs allege that the magneto twisted off or broke off of the engine accessory housing during flight because TCM either designed and manufactured the magneto flange in such a manner that it was too weak to withstand the additional pressure when improper gaskets and clamps were installed by maintenance mechanics or because TCM failed to warn owners and maintenance mechanics of the importance of using only the exact, specified gasket, clamp, and nut to attach this magneto.

Accordingly, TCM's motion for partial summary judgment on Plaintiffs' claim for punitive damages on the basis that it conducted no activity - lawful or otherwise - in Kentucky is **denied**.

B.     Burden of proof for punitive damages based upon gross negligence under Kentucky law.

Gross negligence is the standard for an award of punitive damages under Kentucky law. The general prevailing definition of gross negligence is a "wanton or reckless disregard for the

safety of others." (doc. 68, p. 16; doc. 85, p. 18-19). *See Kinney v. Butcher,* 131 S.W.3d 357, 358–59 (Ky. App. 2004) ("While the courts of the Commonwealth have not always used precisely the same language in defining gross negligence, the prevailing understanding defines gross negligence is a wanton or reckless disregard for the safety of other persons.") TCM argues that Plaintiffs must prove by clear and convincing evidence that TCM's conduct was grossly negligent (doc. 68, p. 16). Plaintiffs respond that their burden of proof is by a preponderance of the evidence (doc. 85, p. 18-19).

After KRS 411.184(1)(c), defining malice for purposes of punitive damages, was declared unconstitutional in *Williams v. Wilson,* 972 S.W. 2d 260 (Ky. 1998) [6] and the common law claim of gross negligence survived, Kentucky courts continued to apply the clear and convincing standard found in KRS 411.184(2) as the burden of proof for punitive damages for gross negligence. Specifically, the Kentucky Court of Appeals, since the decision in *Sand Hill,* [7] has identified the burden of proof for punitive damages as "clear and convincing". *Keeney v. Osborne*, --- S.W.3d ---, 2010 WL 743671, 12 (Ky. Ct. App. March 5, 2010) ("But, notwithstanding that negligence was

---

[6] *See also Ostendorf v. Clark Equip. Co.,* 122 S.W.3d 530, 540 (Ky. 2003) (declining to rule on basis that the issue of whether the "standard of proof required to prove [punitive] damages" was by "clear and convincing or preponderance of the evidence" since the "trial court granted summary judgment on the underlying claims" and "did not touch upon the constitutional issues" surrounding KRS 411.184).

[7] *See also In re Air Crash at Lexington, Ky., Aug. 27, 2006,* 2011 WL 350469, 5 (E.D. Ky. Feb. 2, 2011) ("Under KRS 411.184(2) and (3), Plaintiffs must: (1) establish gross negligence by clear and convincing evidence" and "[t]he question then becomes whether Plaintiffs presented clear and convincing evidence that Comair should have anticipated the reprehensible conduct of the Flight 5191 crew." ); *see also Estate of Embry v. Geo Transportation of Indiana, Inc.,* 478 F.Supp.2d 914 , 923 (E.D. Ky. 2007) ("Plaintiffs' experts opine generally only that, given Chandler's history of bronchitis and asthma, it was foreseeable that he would have 'coughing spells.' (Poore Depo. at 152) This is a far cry from evidence upon which a reasonable jury could conclude, by the clear and convincing standard, that Chandler was grossly negligent in not foreseeing that he would choke on coffee.").

established, Osborne must prove by clear and convincing evidence that Quesenberry acted in such a manner as to warrant an award of punitive damages."); *University Medical Center, Inc. v. Beglin*, 2009 WL 102800, 4 (Ky. Ct. App. Jan. 16, 2009) ("The well-established common law standard for awarding punitive damages is gross negligence. [] Gross negligence is defined as 'a "wanton or reckless disregard for the safety of other persons." ' [] In order to recover punitive damages, a plaintiff must prove his case by clear and convincing evidence. KRS 411.184(2).").

Also, in *Ferriell v. Podgursky*, the court explained as follows:

> Moreover, when a claim for gross, reckless, or wanton negligence is made for punitive damages, KRS 411.184(2) provides that a "plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." Clear and convincing proof can be shown by offering evidence of a probative and substantial nature carrying sufficient weight to convince ordinarily prudent-minded people of its validity. *W.A. v. Cabinet for Health and Family Services, Com.,* 275 S.W.3d 214, 220 (Ky.App.2008).

*Ferriell v. Podgursky,* 2009 WL 5124926, 4 (Ky. App., Dec. 30, 2009) (unreported opinion).

This Court, sitting in diversity, must apply the substantive law of the forum state. Because the accident occurred in Kentucky, the choice of law provisions of the State of Alabama require the application of Kentucky law. In that regard, the Court of Appeals for the Eleventh Circuit instructs that "[i]n rendering a decision based on state substantive law, a federal court must "decide the case the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) citing *Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir.2001) (internal quotations and citation omitted). Also, "[w]here the state's highest court has not spoken to an issue, a federal court 'must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Ernie Hair Ford*, at 1290 quoting *Ins. Co. of N. Am. v. Lexow*,

937 F.2d 569, 571 (11th Cir.1991) (internal quotations omitted). Thus, because the Kentucky Appellate Courts have applied a clear and convincing burden of proof for punitive damages for gross negligence, this Court will do the same.

    C. <u>Sufficiency of the evidence to support an award of punitive damages</u>.

    To determine if Plaintiffs have made a "sufficient showing" as to whether punitive damages are available in this action, the Court should consider the elements of a punitive damages claim based upon gross negligence as well as Plaintiffs' burden of proof at trial under Kentucky law. However, under Kentucky law, "in cases alleging gross negligence and requesting punitive damages, '[a] party plaintiff is entitled to have (her) theory of the case submitted to the jury if there is any evidence to sustain it.'" *Keeney,* --- S.W.3d ----, 2010 WL 743671, 13 (quoting *Shortridge v. Rice,* 929 S.W.2d 194, 197 (Ky.App.1996) (quoting *Clark v. Hauck Mfg. Co.,* 910 S.W.2d 247, 250 (Ky.1995)). Also, "[c]lear and convincing proof can be shown by offering evidence of a probative and substantial nature carrying sufficient weight to convince ordinarily prudent-minded people of its validity." *Ferriell,* 2009 WL 5124926 at 4 (citation omitted).

    "In order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety, or property of others[,]'" *i.e*., gross negligence. *City of Middlesboro v. Brown,* 63 S.W.3d 179, 181 (Ky. 2001) (quoting *Horton v. Union Light, Heat & Power Co.,* 690 S.W. 2d 382, 389-90 (Ky. 1985)). " '[W]anton or reckless disregard for the lives, safety or property of others' bears an element 'not distinguishable from malice implied from the facts.' " *Phelps,* 103 S.W.3d at 52. Plaintiffs must show "something more than the failure to exercise slight care ... there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or

12

willful." *Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 51-52 (Ky. 2003) (quoting *Cooper v. Barth,* 464 S.W. 2d 233, 234 (1971)). However, Plaintiffs are no longer required to show express malice. *Kinney,* 131 S.W. 3d at 358–59 (" It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation.") (internal quotation and citation omitted). "In a case where gross negligence is used as the basis for punitive damages, gross negligence has the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted. Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the rights of others be implied from the nature of the misconduct." *People's Bank of Northern Ky. v. Crowe Chizek and Co. LLC,* 277 S.W. 3d 255, 268 (Ky. Ct. App. 2008) (citation omitted).

TCM argues that Plaintiffs have submitted no admissible evidence of gross negligence which could support an award of punitive damages. Specifically, TCM argues that Plaintiffs rely upon unauthenticated expert reports which are inadmissible hearsay, and thus, there is no evidence of causation or knowledge on TCM's part which would justify an award of punitive damages, and TCM is entitled to partial summary judgment on any claim for punitive damages.

Plaintiffs respond that they have presented sufficient evidence to create a genuine issue of fact as to whether TCM's conduct was grossly negligent and therefore, a genuine issue of fact as to whether punitive damages should be award. Specifically, Plaintiffs argue that their expert witness reports provide substantial evidence that the crash resulted from "a sudden, mid-air loss of all engine power" and that they can present "proof that the engine failed because the TCM-manufactured magneto literally broke off the engine during flight," depriving the engine of power (doc. 85). Plaintiffs' experts state that "fatigue fractures in the magneto flanges were a substantial

13

factor in causing the crash" and that the magneto flange developed fatigue fractures and separated because of higher stress on the flange caused in part by a magneto gasket which was too thick and the use of older, narrower attaching clamps.

To establish that this accident was the result of gross negligence, Plaintiffs rely on TCM's knowledge of the alleged defect before the April 2005 overhaul of Crouch's engine and TCM's failure to correct or warn of the defect. Specifically, Plaintiffs point to the testimony of Tim Davis, a TCM employee, that TCM knew for at least twenty (20) years that magneto flanges would develop fatigue fractures if not properly attached to the engine housing and would separate from the engine and knew of more than ten instances where magnetos had actually separated from aircraft engines (doc. 85-34, Exhibit V). Plaintiffs also assert that TCM knew of two other accidents caused by magneto separation before the November 2006 crash. These accidents occurred on September 25, 2001 and March 1, 2006. (doc. 85-2, p. 6, Exhibit A, Carden report). Plaintiffs point out that TCM was in possession of a June 2002 report from the NTSB Materials Laboratory which addressed magneto separation during flight due to fatigue cracking in the flange (doc. 85-12, p. 7, ¶ 129, Exhibit B). Plaintiffs also point out that TCM received two investigative reports from engineer Kenneth Smith - October 2004 and January 2005 - advising that flange cracking was enhanced by use of older style clamps and thicker gaskets in the September 2001 incident (doc. 85- 31, 85-32, Exhibit S, Exhibit T).[8] Plaintiffs argue that despite this knowledge, TCM did not warn aircraft owners and mechanics before the April 2005 overhaul or November 2006 crash of Crouch's plane. Based upon this conduct, Plaintiffs argue that TCM acted negligently and also acted with gross

---

[8] Smith reported that on September 25, 2001, a magneto separation caused a forced landing by a Piper aircraft with the same Lycoming engine as the Piper aircraft in this action. "The NTSB report indicates that the magneto attachment flanges had both separated from the body of the magneto and that the fracture mechanism was predominately fatigue" (doc. 85-32, p. 5).

14

negligence as demonstrated by its a reckless disregard for the lives, safety and property of its customers and the flying public and its cavalier attitude toward safety.

The issue of whether there is sufficient evidence to support the claim for punitive damages is carried to trial. *See People's Bank of Northern Ky.,* 277 S.W.3d at 268 ("Where the potential for harm is great and directly evident, Kentucky has found that a reckless disregard for the rights of others [gross negligence] may be inferred from the negligent act.").

IV. Conclusion

Accordingly, for the reasons set forth herein, TCM's motion for partial summary judgment is DENIED in part and carried to trial on the issue of sufficiency of the evidence.[9]

DONE and ORDERED this 21st day of April, 2011.

       **s / Kristi K DuBose**
       **KRISTI K. DuBOSE**
       **UNITED STATES DISTRICT JUDGE**

---

[9] The Court declines any ruling on TCM's argument, raised for the first time in its reply, that Plaintiffs' theory in support of their claim for punitive damages is barred by the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552 (1994) (codified at 49 U.S.C. § 40101 note). (doc. 95, p. 10-12). In general, an argument raised for the first time in a reply will not be addressed since the non-movant is without an opportunity to respond to the newly raised argument. *See Kerns v. Sealy,* 2007 WL 2012867, 11 n.20 (S.D.Ala. Jul. 6, 2007) (citing *Fisher v. Ciba Specialty Chemicals Corp.,* 238 F.R.D. 273, 284 (S.D.Ala. 2006) ("As a procedural matter, this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief."); *Martinez v. Weyerhaeuser Mortg. Co.,* 959 F.Supp. 1511, 1515 (S.D.Fla. 1996) , 959 F.Supp. 1511, 1515 (S .D. Fla. 1996) ("the Court finds that the movant may not raise new arguments in a reply brief"); *United States v. Feinberg,* 89 F.3d 333, 341 (7th Cir.1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court.").

Additionally, TCM has filed a motion for summary judgment based on the 18 year statute of repose in GARA (doc. 135). Plaintiffs' response was filed on April 15, 2011 (Doc. 199) and TCM's reply is due on April 29, 2011 (doc. 146).