IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY DALE CROUCH, | ) | |
| RHONDA MAE CROUCH, | ) | |
| TEDDY LEE HUDSON, and | ) | |
| CAROLYN SUE HUDSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-00072-KD-N |
| | ) | |
| TELEDYNE CONTINENTAL MOTORS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on the motion for summary judgment filed by defendant Teledyne Continental Motors, Inc. (TCM) and supporting documents (docs. 135-137), the response and supporting documents filed by Plaintiffs Larry Dale Crouch, Rhonda Mae Crouch, Teddy Lee Hudson, and Carolyn Sue Hudson (Plaintiffs) (doc. 199), TCM's reply (doc. 203), Plaintiffs' sur-response to the reply (doc. 245), and TCM's sur-reply (doc. 267). Upon consideration and for the reasons set forth herein, the motion is DENIED.

I. Factual background

On November 21, 2006, Larry Crouch was piloting his Piper PA-32RT-300 Lance II Cherokee single-engine plane from Mayfield, Kentucky to Frankfort, Kentucky. Teddy Hudson was his passenger. The plane was equipped with a Lycoming IO-540-K1G5D engine and a TCM magneto. The plane crashed near Bardstown, Kentucky.

Analysis of the data obtained from the engine analyzer, which recorded engine data every six minutes, indicated that the plane's engine stopped producing power at a point between 12:03 p.m. and 12:10 p.m. Radio transmission with Air Traffic Control at Louisville-Standiford Airport,

1

ended at approximately 12:12:31 p.m., the approximate time of the crash. The plane did not make it to Bardstown Airport and crash landed at another nearby airstrip. Crouch and Hudson were injured and are now paraplegic.

In regard to the loss of power to the engine, Plaintiffs assert that "the two mounting flanges on the TCM magneto housing broke" because of fatigue fractures in the flanges (doc. 199, p. 3). "The mounting flanges are metal tabs protruding from the magneto housing, used to secure the magneto to the accessory case" on the engine. (Id.). Plaintiffs allege that when the flanges broke during flight, the magneto "backed off the accessory case and disengaged from the drive coupling" which caused the engine to lose power (doc. 199, p. 4). Plaintiffs propose two primary causes for the flanges breaking. First, the flange was poorly designed by TCM and did not include a "margin for error on the part of the installer" and second, the "use of an authorized, yet defectively designed, gasket in combination with clamps which were not recommended for this type of magneto, aggravated the weakness of the magneto design and contributed to the failure of the magneto flange." (doc. 199, p 4-5).

Plaintiffs also argue that because of the confined space between the engine and firewall, the magneto had limited movement after it detached and therefore,

> [i]t is probable that the magneto could reengage with the engine but not have the correct ignition timing. With the engine rotating while the propeller was windmilling, and the fuel control being full forward which is where it was found after the mishap, this condition would cause the engine to either run erratically or not at all. If it did run erratically there would not be any usable power being produced. The engine would produce some very unusual sounds similar to those reported by the ground eye witnesses.

(doc. 199, p. 9).

TCM asserts that the "TCM magneto installed during the April 2005 overhaul by John Jewell fractured from impact forces during Mr. Crouch's crash landing, and that the engine lost power in flight because it was intentionally shut down by Mr. Crouch after the aircraft's right

2

engine cowling caught fire." (doc. 136, p. 9). TCM also argues that if the magneto detached in flight, there would have been no engine noise, thus the noise heard by the three ground witnesses establishes that the magneto was attached (doc. 137, p. 4-5). TCM also relies upon its expert witness John Barton, who opined that if the magneto was detached there would be no spark and hence no engine noise (doc. 203, p. 3-4).

The parties do not dispute the following: The Lycoming engine was manufactured in 1977 and at that time, a magneto manufactured by Bendix Corporation was installed on the engine. TCM acquired Bendix in 1986. The Lycoming engine was installed in the Piper Lance Cherokee airplane at the time of manufacture in 1978 and the plane was first sold in 1978. The plane does not seat more than twenty passengers and was not engaged in scheduled passenger-carrying operations.

The engine was overhauled in April 2005 by John Jewell Aircraft, Inc., and the original magneto was replaced with the same type of magneto. That replacement magneto had been factory-rebuilt by TCM in 2005. The magneto housing was new, including the two flanges, and was manufactured in 2005 by TCM. The magneto was attached to the engine using the original Lycoming clamps, washers, and nuts.

II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing

*Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

III. Analysis

A. Plaintiffs' design defect claims against TCM

TCM moves this Court to grant summary judgment in its favor based on the eighteen year period of repose contained in the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552 (1994) as amended Pub. L. 105-102, § 3(e), 111 Stat. 2216 (1997)(codified at 49 U.S.C. § 40101 note). TCM argues that the GARA prevents the Plaintiffs from asserting claims based on an allegedly defective design of the magneto housing flange. Specifically, TCM argues that the eighteen year period is not "rolled" when the original part or component is replaced by one of materially the same design (doc. 203, p. 10-12).

The Act provides as follows:

Sec. 2. Time limitations on civil actions against aircraft manufacturers.

"(a) In general.--Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or

the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred--

"(1) after the applicable limitation period beginning on--

"(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

"(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

"(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a).

Sub-paragraph (2), is referred to as the "rolling" provision of GARA and has been interpreted to mean that the period of repose is "rolled" or restarted at the time when an original component, system, subassembly or other part is replaced with a new one. *Castillo v. Cessna Aircraft Co.*, 712 F.Supp.2d 1306, 1315 n.2 (S.D. Fla. 2010) citing *Carson v. Heli-Tech*, 2003 WL 22469919, at *4 (M.D. Fla. Sept. 25, 2003) (noting that "GARA also provides a rolling feature, which causes the repose period to begin anew" when a new component, system, subassembly, or other part replaces another and "which is alleged to have caused such death, injury or damage"). Under this paragraph, plaintiffs must allege that the replacement part or component "caused" the injury. *Id*.

TCM relies upon the decision in *LaHaye v. Galvin Flying Service, Inc.*, 144 Fed. Appx. 631 (9th Cir. 2005), for the proposition that even if the magneto flange design was defective and caused or contributed to the crash, GARA's eighteen year period of repose prohibits a cause of action

because the flange design had not been substantially altered[1] in the previous eighteen years. TCM is correct that *LaHaye* expanded the protection of GARA by requiring that the "new part" be a newly designed part in order to trigger the period of repose. However, the plain language of GARA provides no such protection. The "rolling" provision clearly provides that the period for bringing a cause of action restarts each time a "new" part replaces an old part and the "new" part, *i.e.* the flange, is alleged to be the problem. The "rolling" provision does not require that the part be newly designed, rather it only requires it to be a new part. As explained by the court in *Sheesley v. The Cessna Aircraft Co.*, 2006 WL 1084103, (D.S.D. 2006):

> [T]he plain language of GARA's rolling provision permits plaintiffs to assert a claim against the manufacturer of a replacement part so long as the crash occurs within 18 years of the replacement of the part. *See* GARA, 2(a). If Congress wanted to further limit application of GARA's rolling provision to certain substantive theories, such as defective design cases, it would have added language to that effect. Indeed, in a different part of the statute, Congress expressly limited application of GARA to certain substantive theories of liability by limiting application to claims asserted against manufacturers acting in their manufacturing capacity. *See* GARA, § 2(a). This suggests that Congress recognized its ability and chose, when appropriate, to distinguish between substantive theories. Congress did not, however, limit claims for defective design.

*Id*. at *8. Thus, because GARA does not provide the protection that TCM seeks, its motion for summary judgment is DENIED.

B. <u>Whether the replacement TCM magneto and its housing including the flanges "caused" the crash such that there is a basis for "rolling" of the eighteen year period</u>.

TCM also argues that there is no basis for "rolling" the eighteen year period under GARA § 2(a(2) because the new component - the replacement magneto and its housing including the flanges - did not cause the crash. Plaintiffs respond that the evidence presented in the response and in

---

[1] The Court agrees with TMC that Plaintiffs have failed to show a substantial alteration in the design of the particular flange at issue in this case.

Plaintiffs' response to the motion for summary judgment as to punitive damages (doc. 85), establishes that the magneto separated during flight and caused the crash (doc. 199).

On motion for summary judgment, judgment should be granted if TCM "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, TCM, as the party seeking summary judgment, bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). TCM argues that this Court should accept the opinions expressed by its expert witnesses, the testimony of witness George Durham who spoke with Crouch at the hospital after the crash, and the ground witnesses testimony that they heard engine noise, and find that there is no genuine dispute of fact that Crouch shut down the engine and could not restart it, and that the magneto did not detach but instead broke off on impact. TCM also argues that the testimony and opinions of Plaintiffs' expert witnesses could not survive a Daubert challenge and therefore should be excluded as inadmissible under Rules 702 and 703 of the Federal Rules of Evidence.[2]

In other words, the parties support their respective version of the facts largely by way of expert witness reports and rebuttal expert witness reports almost all of which are subject to motions to strike or motions to exclude and rely in part upon a credibility determination as to the fact witnesses' testimony. However, on motion for summary judgment the Court cannot weigh the evidence, including the disputed opinions of the Plaintiffs' and TCM's expert witnesses, or make determinations of credibility regarding fact witness testimony. *Moton v. Cowart*, 631 F.3d 1337, 1342 (11th Cir. 2011) citing *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) (on motion for summary judgment, "the district court must not resolve factual disputes by weighing

---

[2] TCM has filed a motion to strike the supplemental Rule 26(e)(2) expert rebuttal reports of Plaintiffs' expert witnesses and to strike the corrected affidavit of William Carden (doc. 214).

conflicting evidence ...."); *Sealey v. Pastrana*, 399 Fed.Appx. 548, 550 ( 11th Cir. 2010) ("At this stage of the proceedings, '[n]either we nor the district court are to undertake credibility determinations or weigh the evidence.'") quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). Instead, the Court is to "view[] all of the facts in the record in the light most favorable to the non-moving party and draw[] inferences in [their] favor. *Sealey*, 399 Fed. Appx, at 550 (citing *Burger King Corp. v. E–Z Eating, 41 Corp.*, 572 F.3d 1306, 1312–13 (11th Cir. 2009). Thus, without weighing the evidence or making credibility determination, and viewing all facts and evidence in the record in the light most favorable to Plaintiffs as the non-movant, and drawing all inferences in their favor, the Court finds that there is, at this time, a genuine dispute of material fact as to the cause of the crash. Accordingly, TCM's motion for summary judgment is denied.

C. Whether Plaintiffs' "failure to warn" theory of liability is available in actions governed by GARA.

TCM argues that the cases interpreting GARA agree that "failure to warn" claims, are not available in cases governed by GARA. In the reply, TCM also argues that Lycoming as the owner of the engine was required by the Federal Aviation Administration (FAA) to issue instructions and manuals regarding the installation of the magneto and that under FAA regulations, TCM was not obligated to publish a service bulletin or other information or warning in regard to the Lycoming hardware or installation instructions for the TCM magneto (doc. 203, p. 12-16). TCM also argues that the FAA by way of a 1996 memorandum, decided that Lycoming, not TCM, would address problems with the "magneto attaching hardware, including the damages to magneto flanges resulting from Lycoming's clamping mechanism- not TCM …" *Id*. at p. 13.

Plaintiffs respond that TCM misinterprets their claim. Plaintiffs assert that they actually claim that "TCM is liable for failing to warn its consumers and the flying public about the defective condition of its magnetos" and that "their failure-to-warn claims against TCM are based on the

9

defective and unreasonably dangerous condition of the magneto itself, and are independent of any claims against Avco Lycoming" in regard to the attachment hardware (doc. 199, p. 22).

TCM's argument focuses on its duty to warn regarding the use of Superior's gasket or Lycoming's attachment hardware. However, Plaintiffs' "failure to warn" claim is based on its allegations that TCM had knowledge but failed to warn that the magneto housing flanges may develop fatigue fractures which could result in the flanges cracking and the magneto disengaging from the engine. In short, Plaintiffs' claim under Kentucky law is that TCM failed to warn the airplane owners and the public of the inherent defects in TCM's product. Despite TCM's argument that Lycoming bore the duty to provide warnings and instructions regarding the installation of the TCM magneto on Lycoming's engines, that is not dispositive of the issue before the Court. Plaintiffs' claim is based upon the design of the 2005 replacement magneto and magneto housing flanges and not the Lycoming hardware, the Superior gasket, or the negligence of any mechanic. Accordingly, the Court finds that Plaintiffs' claims are not barred by GARA.

IV. Conclusion

Accordingly, for the reasons set forth herein, TCM's motion for summary judgment is DENIED.

DONE and ORDERED this 22nd day of June, 2011.

                                             **s / Kristi K DuBose**
                                             **KRISTI K. DuBOSE**
                                             **UNITED STATES DISTRICT JUDGE**