IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY DALE CROUCH, ) | |
| RHONDA MAE CROUCH, ) | |
| TEDDY LEE HUDSON, and ) | |
| CAROLYN SUE HUDSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 10-00072-KD-N |
| ) | |
| TELEDYNE CONTINENTAL MOTORS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

This action is before the Court on the motion to exclude the supplemental expert reports of William D. Carden, Mark Seader, James E. Hall, and Richard Wartman and to exclude Carden's affidavit (doc. 214); the motions to exclude all or portions of the expert testimony of Barry Schiff (doc. 232), Richard Wartman (doc. 233), Mark Seader (doc. 234), J.W. Morris, Jr. (doc. 235), Norman Alvares (doc. 236), John Barton (doc. 238), Robert Marwill (doc. 239), Bernard Coogan (doc. 241), and James Hall and Robert Pierce (doc. 242); and responses. Oral argument was held on June 27, 2011.

**I. Statement of the Applicable Law**

"While *Federal Rules of Evidence* 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude expert testimony that is either unreliable or irrelevant." *Johnson v. Louisville Ladder*, 2008 WL 5122261, 7 (S.D.Ala., November 14, 2008) (citing *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1310 (11th Cir.1999). In *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir.2010), the Court of Appeals for the Eleventh Circuit explained the standard set forth in *Daubert*

*v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993), as follows:

> *Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury. 509 U.S. at 597, n. 13, 113 S.Ct. 2786. The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[ *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)].
>
> Federal Rule of Evidence 702 governs the admission of expert testimony in federal court, and provides that:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>
> Applying these principles, this Court has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998).

*Kilpatrick,* 613 F.3d at 1335.

When the reliability of the expert's methodology is at issue, the Eleventh Circuit instructs

that

> [i]n deciding the question of reliability, the Supreme Court articulated a non-exhaustive list of relevant factors to consider: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786; *McCorvey*, 298 F.3d at 1256. The court must do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786.

*Kilpatrick*, 613 F.3d at 1335.

"The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care,* 582 F.3d 1227, 1232 (11th Cir. 2009)).

**II. Analysis**

**A) <u>Teledyne Continental Motors, Inc.'s (TCM) first motion to strike and exclude expert testimony (doc. 214)</u>.** TCM moves this Court to exclude the supplemental expert rebuttal reports by William D. Carden, Mark Seader, James E. Hall, and Richard Wartman (docs. 196-1-4) and the corrected affidavit of William Carden (doc. 197), on the basis that Plaintiffs are estopped and precluded from asserting an "entirely new theory" - that the magneto did not completely detach during flight but instead intermittently reattached but without providing usable power to the engine. TCM asserts that the supplemental reports are inconsistent with the theory of the case set forth in Plaintiffs' complaint and their prior expert reports. TCM also argues that the supplemental expert reports are untimely and thus did not allow TCM a reasonable opportunity for discovery.

Upon consideration of the pleadings, the Court agrees with the Plaintiffs' response: The supplemental reports are not clearly inconsistent with the complaint or the earlier expert reports. Moreover, considering the timing of the deposition of TCM's experts, the supplementation was not untimely. TCM's Motion to Strike is **DENIED**.

**B) <u>Plaintiffs' motion to exclude certain opinions and testimony of TCM's proposed expert witness, Barry Schiff (doc. 232)</u>.** Plaintiffs seek to exclude Mr. Schiff's testimony that the use of a shoulder harness would have reduced bodily injury. Plaintiffs assert that Mr. Schiff's testimony is not reliable because he is not qualified to give this opinion; he is not a biomedical

engineer or a biomechanic on injury to the human body. Plaintiffs also argue that even if qualified, Mr. Schiff has no bases from which to render the opinion as he has not reviewed any of the medical records.

TCM argues that Plaintiffs do not dispute Mr. Schiff's qualifications to testify as to the responsibility and duties of a pilot and that it is axiomatic that use of a safety harness reduces injuries (doc. 257). As support, TCM cites *Tetrick v. Frazier* 119 S.W.3d 89 (Ky App. 2003). In *Tetrick* the court allowed a civil engineer/accident reconstruction expert to testify that the passenger would not have had his injuries had he been wearing a seat belt. *Id*. The court stated that this was not a medical opinion, but rather was expert testimony on the passenger's motion on impact. The court reiterated "that to qualify as an expert witness concerning the seat belt defense, 'the witness must possess sufficient training, special knowledge, or skill to testify on the subject dealing with the effect of non-usage of seatbelts in collisions.' Further, 'what must be shown is a causal relation between the claimant's failure to wear a seatbelt and the degree of subsequent injury.'" *Id*. at 93-94 (*quoting Bass v. Williams,* Ky.App., 839 S.W.2d 559, 566 (1992)).

Barry Schiff is an experienced pilot and a flight and safety instructor. To the extent he is offered as an expert regarding the standard of care that a pilot should follow, he appears to be well qualified. However, Mr. Schiff is not an engineer or accident reconstruction expert. There is no indication that he has any special knowledge regarding the specific effect of non-usage of seatbelts or harnesses during various types of impact. Moreover, it has not been demonstrated that Mr. Schiff has any ability or basis to testify to the causal relation between the Plaintiffs' failure to wear a harness and the degree of subsequent injury sustained by the Plaintiffs. Accordingly, Plaintiffs' motion to exclude Barry Schiff's testimony that "it is likely that the use of shoulder harnesses in the aircraft would have reduced the extent of bodily injury" is **GRANTED**.

**C) TCM's motion to exclude opinion testimony of Plaintiffs' designated expert Richard Wartman (doc. 233).** TCM argues that Mr. Wartman's opinion on the engine fire and the magneto design is not admissible because his opinions are not reliable and not based upon scientific, technical, or other specialized knowledge. TCM also argues that Mr. Wartman's opinion on Plaintiffs' failure to warn claim is not reliable or relevant.

Plaintiffs respond that Mr. Wartman is qualified by knowledge, skill, experience and training and that his testimony will aid the jury. Mr. Wartman testified at the hearing and at his deposition regarding his qualifications. Mr. Wartman is a mechanical engineer with a Masters Degree in structural analysis. He has been employed in various positions with the U.S. Navy including as a lead structural engineer and as a structural design instructor. In his work with the Navy, Mr. Wartman has designed flanges but not magnetos. Also, for seventeen years Mr. Wartman has worked as an aviation accident investigator.

Based on Mr. Wartman's resume (doc. 262-1) and the testimony given at the hearing the Court finds that Mr. Wartman is qualified to render an opinion on the cause of the accident and the design of the magneto flange. The Court also finds that Mr. Wartman's opinion in this regard is based on specialized knowledge, experience and training and will assist the jury.

However, the Court does not find that Mr. Wartman is qualified to opine on whether the fire occurred in-flight or post-crash. Neither Mr. Wartman's resume nor his testimony at the hearing or deposition provided any basis for Mr. Wartman to opine as to when the fire occurred. Mr. Wartman was unable to state the cause or origin of the fire. Rather he simply stated that the soot patterns indicate a post-crash fire. This opinion is not supported by any specialized knowledge, training or experience in identifying when the fire occurred.

Also, the Court finds that Mr. Wartman is not qualified to give an opinion regarding TCM's duty to warn of defects. Mr. Wartman testified that the identified problem, the use of the wrong

gasket and clamps in attaching the magneto housing, could be corrected by warning the mechanic to use the correct gasket and clamp. Mr. Wartman also stated that if the correct gasket and clamp were used then the design of the flange would be fine. This testimony appears to be based on his qualifications and expertise. However, Mr. Wartman exhibited no specialized knowledge or experience regarding the appropriate person to give the warning to the mechanic. Rather he generally stated that the mechanic should be warned and that if there is a design defect, the designer/engineer has an ethical obligation to warn of problems with the design.

Accordingly, TCM's motion to exclude the testimony of Richard Wartman is **GRANTED** as to Mr. Wartman's testimony concerning when the fire occurred and TCM's duty to warn and **DENIED** as to Mr. Wartman's opinion concerning the cause of the crash and any design defects of the flange.

**D) TCM's motion to strike and exclude certain portions of the expert testimony of Mark Seader (doc. 234).** TCM argues that Mr. Seader's opinion as to the cause of the fire, the design defect of the flange, and the supplemental opinion regarding the partial detachment of the magneto should be excluded on the basis that he is not qualified in fire science or design defects and is not a metallurgist. TCM also argues that Mr. Seader did not follow reliable scientific methodology.

Plaintiffs respond that the issue is origin of the fuel to the fire and Mr. Seader is qualified to give an opinion on fuel flow/fuel escape. Plaintiffs also argue that Mr. Seader's opinion as to metals is based on his experience as a mechanic not as a metallurgist.

According to Mr. Seader's resume and testimony, he has 34 years experience as an aviation mechanic. He also has extensive experience as an aviation forensic investigator where he gained specialized knowledge in analysis of aircraft accidents, engine failures and component testing. Mr.

Seader was employed by Plaintiffs to determine "the cause of the in-flight loss of power" to the subject airplane. (Plaintiff's Exh. 2 to the hearing) The Court finds that Mr. Seader is qualified to render an opinion on the cause of the accident and that such opinion is based on specialized knowledge and experience and will assist the jury.

However, Plaintiffs also wish to introduce Mr. Seader's opinion regarding the origin and the timing of the fire, TCM's duty to warn and the design defects of the flange. Plaintiffs have failed to provide any evidence that Mr. Seader is qualified to render an opinion on design defects or the timing of the fire. Mr. Seader is not an engineer, he has no experience or education in design, thus he cannot opine as to design defects. Moreover, he has no education or experience in determining cause and origins of fire, nor has he any experience in determining the timing of a fire, *i.e.* in-flight or post-crash.

As to the duty to warn, Mr. Seader testified that he received and relied on a lot of service bulletins in his capacity as an airplane mechanic. Thus, Mr. Seader is certainly qualified to testify regarding the use of service bulletins from manufacturers by mechanics in repairing and overhauling airplane engines. However, Mr. Seader did not exhibit any specialized knowledge or experience regarding a manufacturer's duty in regard to warning about defects.[1]

Accordingly, TCM's motion to exclude the testimony of Mr. Seader is **GRANTED** as to his opinion regarding the timing of the fire, design defects of the flange and a manufacturer's duty to warn.

**E) Plaintiffs' *Daubert* motion to limit testimony of TCM's expert J.W. Morris, Jr. (doc. 235).** Plaintiffs argue that Mr. Morris's testimony should be limited to metallurgy, his stated

---

[1] Mr. Seader testified that he believes that it is Lycoming's duty to put out Service Bulletins regarding the attaching parts.

expertise. TCM argues that the motion should be denied because there is no citation to the record, *i.e.*, supporting documentation, and no specific factual or legal argument in support of the motion.

Upon consideration, the motion (doc. 235) is **STRICKEN** for lack of specificity as to the objectionable portion of Mr. Morris' testimony. Plaintiffs cite to certain deposition pages as evidence of testimony which should be excluded but do not direct the Court to the location in the docket where the deposition pages can be found nor do the Plaintiffs' make any specific argument as to why the testimony is objectionable. *See Hughes v. Stryker Sales Corp.*, 2010 WL 1961051, 3 (S.D.Ala. 2010) (addressing a motion for summary judgment and citing *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.").

**F) Plaintiffs' *Daubert* motion to limit testimony of TCM's expert Norman Alvares (doc. 236).**

Plaintiffs argue that Mr. Alvares' testimony should be limited to that of a fire scientist and fire protection engineer, his stated expertise. TCM argues that the motion should be denied because there is no citation to the record, *i.e.*, supporting documentation, and no specific factual or legal argument in support of the motion.

Upon consideration, the motion (doc. 236) is **STRICKEN** for lack of specificity as to the objectionable portion of Mr. Alvares' testimony. Plaintiffs cite to certain deposition pages as evidence why the testimony should be limited but do not direct the Court to the location in the docket where the deposition pages can be found, nor do the Plaintiffs' make any specific argument as to why the testimony is objectionable. *See Hughes v. Stryker Sales Corp.*, 2010 WL 1961051, 3

8

(S.D.Ala. 2010) (addressing a motion for summary judgment and citing *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.").

**G) Plaintiffs' *Daubert* motion to limit testimony of TCM's expert John Barton (doc. 238).**

Plaintiffs argue that Mr. Barton's testimony should be limited to Aerospace Engineering, strength materials and basic material characteristics, his stated expertise. TCM argues that the motion should be denied because there is no citation to the record, *i.e.*, supporting documentation, and no specific factual or legal argument in support of the motion.

Upon consideration, the motion (doc. 238) is **STRICKEN** for lack of specificity as to the objectionable portion of Mr. Barton's testimony. Plaintiffs cite to certain deposition pages as evidence why the testimony should be limited but do not direct the Court to the location in the docket where the deposition pages can be found, nor do the Plaintiffs' make any specific argument as to why the testimony is objectionable. *See Hughes v. Stryker Sales Corp.*, 2010 WL 1961051, 3 (S.D.Ala. 2010) (addressing a motion for summary judgment and citing *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.").

**H) Plaintiffs' *Daubert* motion to limit testimony of TCM's expert Robert Douglas**

**Marwill (doc. 239).**

Plaintiffs argue that Mr. Marwill's testimony should be limited to aircraft design, aircraft propulsion and fuel systems, and crash dynamics, his stated expertise. TCM argues that the motion should be denied because there is no citation to the record, *i.e.*, supporting documentation, and no specific factual or legal argument in support of the motion.

Upon consideration, the motion (doc. 239) is **STRICKEN** for lack of specificity as to the objectionable portion of Mr. Marwill's testimony. Plaintiffs cite to certain deposition pages as evidence why the testimony should be limited but do not direct the Court to the location in the docket where the deposition pages can be found, nor do the Plaintiffs' make any specific argument as to why the testimony is objectionable. *See Hughes v. Stryker Sales Corp.*, 2010 WL 1961051, 3 (S.D.Ala. 2010) (addressing a motion for summary judgment and citing *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.").

**I) TCM's motion to strike and exclude certain portions of expert testimony of Bernard J. Coogan (doc. 241).** TCM seeks to exclude Mr. Coogan's testimony regarding when the fire occurred, the purported design defect of the magneto flange and TCM's duty to warn. TCM argues that Mr. Coogan has no experience or education to qualify him as a fire expert and that he performed no investigation to support his theories. As to design, TCM argues that Mr. Coogan has no aircraft design education or training and is not an engineer.

Plaintiffs clarify that they do not offer Mr. Coogan as an expert in design. Plaintiffs argue that they offer Mr. Coogan on fire associated with airplane crashes - whether the fire occurred in-

flight or on the ground - but not as a universal expert on fire and that he is qualified to testify to when the fire occurred.

Bernard Coogan has over 50 years experience as a pilot and over 40 years experience as an aviation accident investigator. Mr. Coogan has investigated over 1500 airplane crashes to determine causation; many of these during his service during the Vietnam War. Mr. Coogan has also specifically investigated 20-25 cases to determine whether the fire occurred in-flight or post-crash and to analyze fire damage. Mr. Coogan has no formal training in fire science and does not purport to be a general fire expert. However, expertise is not gained from formal education alone. Mr. Coogan's experience with the Air Force as a fire damage analyst and his experience determining the timing of the fire provide the necessary expertise to support his opinions. Thus, the Court finds that Mr. Coogan is qualified to give an opinion regarding the timing of the fire and that such opinion is supported by specialized knowledge and experience and would be helpful to the jury.[2]

As to the failure to warn opinion, Plaintiff has presented insufficient argument and evidence that Mr. Coogan is qualified to give an opinion as to a manufacturer's duty to warn. Accordingly, TCM's motion to exclude Mr. Coogan's testimony is **DENIED** as to his opinion regarding the timing of the fire and **GRANTED** as to his testimony regarding design defect and failure to warn.

**J) TCM's motion to strike and exclude expert testimony of Robert Pearce and James Hall** (doc. 242). TCM argues that all testimony or opinion by Mr. Pearce and Mr. Hall should be excluded because their opinions are based on review of other reports and not based upon reliable

---

[2] At the hearing, TCM attempted to challenge Mr. Coogan's ability to give testimony on causation. The objection is untimely. Moreover, the Court finds no merit to a challenge to Mr. Coogan's expertise on the issue of causation.

technical or scientific method or personal investigation. TCM argues that neither Mr. Pearce nor Mr. Hall are qualified to give an opinion in regard to the source or origin of the engine fire.

Plaintiffs argue that Mr. Pearce and Mr. Hall are qualified by skill, knowledge and experience to give opinions in regard to the crash, the relevant Federal Aviation Administration regulations, and in regard to TCM's duty to warn.

Robert Pearce and James Hall have submitted almost identical expert reports. These reports summarize all of the evidence that Plaintiffs expect to present to the jury and then summarily put a stamp of approval on the Plaintiffs' evidence. While James Hall has an impressive resume, including being the Chairman of the National Safety Transportation Board, there is nothing in the record to support the Plaintiffs' argument that he is qualified to render an opinion as to causation, timing of the fire, design defects or TCM's duty to warn.[3] Mr. Hall's background is in law and government relations. He apparently is well qualified in those respects and is capable of running a large government agency. However, Mr. Hall is not an engineer or aviation mechanic. There is also insufficient evidence of any hands on experience or training as an accident investigator. Moreover, while it is unquestioned that he has gained familiarity with what evidence is needed to make a determination of causation in airplane accidents, this familiarity does not equate to expertise.

Robert Pearce was not present for the hearing because of a recently incurred physical injury. However, from the record the Court is able to discern that Mr. Pearce has over 13 years experience investigating aviation accidents to determine causation. Mr. Pearce is also a pilot and a flight instructor. Thus, it appears that Mr. Pearce could be a qualified expert on the issue of causation. The problem with Mr. Pearce's opinion is that he has not conducted any independent investigation.

---

[3] Mr. Hall was not presented at the hearing. Thus, this determination is made solely on the arguments presented and Mr. Hall's resume.

Rather, he relies primarily on the investigation of other experts and simply puts his approval on their findings. The Court does not find that this would be helpful to the jury. The Court also finds that to any extent Mr. Pearce's opinion is independent of the other experts, his testimony would be cumulative. Thus, TCM's motion to exclude Mr. Hall's and Mr. Pearce's testimony is **GRANTED**.

**DONE** and **ORDERED** this the 29th day of June, 2011.

                                           **s / Kristi K. DuBose**
                                           **KRISTI K. DuBOSE**
                                           **UNITED STATES DISTRICT JUDGE**