IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY DALE CROUCH, | ) | |
| RHONDA MAE CROUCH, | ) | |
| TEDDY LEE HUDSON, and | ) | |
| CAROLYN SUE HUDSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-00072-KD-N |
| | ) | |
| TELEDYNE CONTINENTAL | ) | |
| MOTORS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| BRIDGEFIELD CASUALTY | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Intervenor Plaintiff. | ) | |

## ORDER

This action is before the Court on the Bill of Costs and Corrected Bill of Costs filed by

defendant Teledyne Continental Motors, Inc. (TCM) wherein TCM seeks costs in the total

amount of $91,987.12 (docs. 390, 392-1), plaintiffs' objection (doc. 397), TCM's response to the

objection (doc. 403), plaintiffs' memorandum in support of their objections (doc. 409), TCM's

reply (doc. 414) and TCM's supplement to the Bill of Costs (doc. 416).[1]  Upon consideration and

for the reasons set forth herein, costs are taxed in the total amount of $35,499.48.

I.  Statement of the Law

Rule 54(d)(1) of the Federal Rules of Civil Procedure, provides that "[u]nless a federal

---

[1] TCM filed a supplemental brief informing the Court that plaintiffs' appeal had been
dismissed (doc. 441).  Plaintiffs filed a motion to reinstate the appeal (doc. 442).  The Eleventh
Circuit Court of Appeals granted plaintiffs' motion, reinstated the appeal, and set a new briefing
schedule (doc. 444).

statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should

be allowed to the prevailing party. . .[.]" Fed.R.Civ.P. 54(d)(1).  However, Rule 54(d) does not

confer authority to "tax costs to reimburse a winning litigant for every expense" incurred in the

case. *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

Instead, "a court may only tax costs as authorized by statute".  *United States Equal Employment*

*Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir.2000) "[A]bsent explicit

statutory or contractual authorization, federal courts are bound by the limitations set out in 28

U.S.C. § 1920" when awarding costs to a prevailing party. *Arcadian Fertilizer, L.P. v. MPW*

*Indus. Services, Inc.*, 249 F.3d 1293, 1296 (11th Cir.2001).  Thus, while "trial courts are

accorded great latitude in ascertaining taxable costs[,]" *Loughan v. Firestone Tire & Rubber Co.,*

749 F.2d 1519, 1526 (11th Cir.1985), this Court is limited to those costs specifically designated

in 28 U.S.C. § 1920 and § 1921. *Crawford Fitting Co. v. J.T. Gibbins, Inc.,* 482 U.S. 437, 445

(1987).  In that regard, 28 U.S.C. § 1920 provides statutory authorization that "[a] judge or clerk

of any court of the United States may tax as costs the following:

>(1) Fees of the clerk and marshal;
>
>(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
>(3) Fees and disbursements for printing and witnesses;
>
>(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
>(5) Docket fees under section 1923 of this title;
>
>(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

28 U.S.C. § 1920.

Additionally, 28 U.S.C. § 1921 provides for fees for the services of the United States

Marshal.  In relevant part, the statute provides that the "marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for the following: (A) Serving a . . . summons, complaints, . . . in any case or proceeding", "(B) Serving a subpoena or summons for a witness . . .", "(G) Necessary travel in serving or endeavoring to serve any process, writ, or order, except in the District of Columbia, with mileage to be computed from the place where service is returnable to the place of service or endeavor." 28 U.S.C. § 1921(a)(1).

Also, "costs" are not synonymous with "expenses." *Eagle Ins. Co. v. Johnson,* 982 F. Supp 1456, 1458 (M.D. Ala. 1997).  "[E]xpense includes all the expenditures actually made by a litigant in connection with the lawsuit." *Id.* (citations omitted).  "[T]he costs that the district court may award under Rule 54(d)(1) are listed in 28 U.S.C. § 1920, and a district court may not award other costs or exceed the amounts provided in § 1920 without explicit authorization in another statutory provision." *Id.*  Thus, costs will generally be less than the litigation expense. *Id.*

Plaintiffs as the party opposing the taxation of costs must "overcome the presumption" created by Rule 54(d) that TCM should be allowed its costs. *Weller v. Finger,* 2010 WL 2465522, *5 (S.D. Ala. June 15, 2010); *Mathews v. Crosby,* 480 F.3d 1265, 1276 (11th Cir.2007). "To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." *Chapman v. AI Transp.,* 229 F.3d 1012, 1039 (11th Cir. 2000). However, if TCM has "exclusive knowledge regarding the proposed cost", such as how photocopies were used, then it has the burden to demonstrate that the cost is taxable. *Spatz v. Microtel Inns and Suites Franchising, Inc.*, 2012 WL 1587663, *6 (S.D. Fla. May 4, 2012). Overall, TCM has "the burden of submitting a costs request that will allow the Court to determine which costs were incurred and whether [TCM is] entitled to them. *Caballero v. Sum Yum Gai, Inc.,* 2011 WL 1675001, *5 (S.D. Fla. May 3, 2011) (citing *Lee v. American Eagle*

*Airlines, Inc.*, 93 F.Supp.2d 1322, 1335 (S.D. Fla. 2000)).  TCM must state and support its request for costs with sufficient specificity so that the Court may determine whether the costs were necessarily obtained for use in the case.

II.  Analysis

Pursuant to Local Rule 54(d) and Standing Order No. 13, the Clerk may tax certain costs upon receipt of the Bill of Costs.  TCM filed its Bill of Costs and amended Bill of Costs (docs. 390, 392).  Plaintiffs objected before the Clerk taxed costs (docs. 397).  TCM filed its response (doc. 403), plaintiffs replied in opposition (docs. 409), and TCM filed a response to their reply (doc. 414).  Therefore, an initial taxation of costs by the Clerk is not necessary.

A.  Fees for service of subpoenas

The Eleventh Circuit has held that "private process server fees may be taxed pursuant to §§ 1920(1) and 1921" and that "a district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921." *U.S.E.E.O.C.*, 213 F.3d at 623-624 (vacating and remanding to determine "whether the fees requested by the EEOC are commensurate with the limits found in § 1921.").   In that regard, the U.S. Marshal's hourly rate for service of process in 2010 and 2011 was $55.00. 28 C.F.R. § 0.114(a)(3).  Also, the applicable mileage rate was $0.50 in 2010 and $0.51 in 2011.[2]

TCM seeks to recover costs in the amount of $2,730.00 for service of twenty-one subpoenas on twenty persons or entities by private process server (doc. 392-2, p. 11). TCM asserts that thirteen of the subpoena serves were invoiced at a flat rate in an amount equal to less

---

[2] Plaintiffs assert that the 2011 rate was $0.55 per mile.  The appropriate rate was $0.51. *Spatz*, 2012 WL 1587663, at *3 ("The regulation governing fees charged by the Marshals Service provides that '[t]ravel costs, including mileage, shall be calculated according to 5 U.S.C. chapter 57.' [28 C.F.R.] § 0.114(c). … In 2011, the year Microtel's subpoenas were served, the applicable reimbursement rate was $0.51 per mile.")

than two hours of U.S. Marshal time and that three serves were only slightly higher.  TCM

argues that the higher costs of service on Crankcase Services, USA, LLC and four witnesses -

Linda Nalley, Jody McCubbin, Greg Brothers and Paul Burress - are justified because of

multiple attempts to serve.

Plaintiffs argue that TCM should not recover these costs because there is no statutory

authorization for awarding fees of special process servers[3] and because the process server's

invoices document only flat rates without hours or mileage such that a rate comparable to the

U.S. Marshal's rate cannot be calculated.  Plaintiffs assert that if such fees are awarded, the fees

should not exceed $55.00 per hour, travel cost (mileage) or out-of-pocket expense at the U.S.

Marshal's Service rate.  Plaintiffs concede that twenty miles is a fair mileage estimate for service

in cities with a U.S. Marshal's Service office (doc. 409-1, p. 3).

1. Itemization

Starting with the four witnesses, TCM paid a total of $845.00 (doc. 390-9, p. 13).[4]

Plaintiffs assert that a U.S. Marshal dispatched from the U.S. Courthouse in Louisville, Kentucky

would have driven a round trip of eighty miles to Bardstown, Kentucky to serve these witnesses.

Since the U.S. Marshal may have incurred the same difficulty locating these witnesses,[5] a total

---

[3]  Plaintiffs also argue that the subpoenas issued to medical care providers were
unnecessary because the medical information had been produced in the initial disclosures. TCM
responds that the subpoena was necessary to insure that TCM had complete, accurate and up-to-
date medical records.  TCM's explanation is sufficient to support allowance of a reasonable cost
of service.

[4]  Seven hours at the rate of $65.00 per hour ($455.00), 200 miles at $.60 per mile
($120.00) and a per serve fee of $90.00 for three serves ($270.00) for a total of $845.00.

[5]  Nalley and McCubbin were served March 6, 2011, and Brothers March 8, 2011.  The
invoice shows multiple attempts to serve Burress but not the date. At least two trips were
made to Bardstown - March 6 and 8.  Two round trips by a U.S. Marshal, estimated by plaintiffs as 80
miles, would total 160 miles which is reasonably close to the 200 miles invoiced.

cost of $487.00[6] is taxed.

TCM paid a flat rate of $225.00 for service on Kosola & Associates,[7] in Albany, Georgia. TCM explained that the process server was located sixty miles away in Thomasville, Georgia. However, the United States District Court for the Middle District of Georgia maintains a courthouse in Albany, Georgia. To keep costs commensurate with service by the U.S. Marshal, $55.00 is a reasonable and allowable cost for service.  As to mileage, Kosola was served in 2011. Multiplying twenty miles, conceded by plaintiff as a reasonable mileage estimate for service in a district with a U.S. Marshal office, times $0.51 yields $10.20.  Therefore, a total cost of $65.20 is taxed as a reasonable cost for service on Kosola.

TCM paid a flat fee of $220.00 for service upon Crankcase in Tulsa, Oklahoma.  The invoice shows multiple attempts culminating in service on the registered agent. Crankcase was served in Tulsa where the United States Courthouse for the Northern District of Oklahoma is located. Acknowledging that the U.S. Marshal may also have made multiple attempts and to keep costs commensurate with service by the U.S. Marshal, $110.00 is a reasonable and allowable cost (two hours at $55.00 per hour).  Mileage is allowed at the 2011 rate of $10.20 (twenty miles at $0.51 per mile).  Therefore, a total cost of $120.20 is taxed.

TCM paid a flat fee of $85.00 to serve George Durham in Lakeland, Florida.  The nearest district court is thirty-five miles away in Tampa, Florida. Thus, a reasonable cost of service based upon the U.S. Marshal's rates would be $110.00 (for two hours) plus mileage in the

---

[6]  Seven hours at the rate of $55.00 yields $385.00 plus $102.00 for 200 miles at the 2011 rate of $0.51, for a total of $487.00.

[7]  Plaintiffs argue that the subpoena to Kosola produced no documents and costs should be disallowed.  TCM responds that Kosola repaired the engine mount and any documents would have been necessary to the case. TCM's explanation is sufficient to support allowance of a reasonable cost of service.

amount of $35.00 (seventy miles times the 2010 rate of $0.50 yields $35.00).  The actual cost is less than the estimated cost of service by the U.S. Marshal.  Therefore, the actual cost of this service, $85.00, is taxed. *See DuChateau v. Camp Dresser & McKee, Inc.*, 2012 WL 1069166, *3 (S.D. Fla., Mar. 29, 2012) (awarding the actual $25.38 subpoena-service fee as reasonable and "consistent with the analogous service rate charged by the Marshals Service").

All of the remaining services are invoiced at a flat rate ranging from $80.00[8] to $110.00.[9] These fourteen persons or entities reside or are located near a federal courthouse.  Thus, $55.00 is a reasonable cost per service.  Three were served in 2011 and adding mileage of $10.20 (twenty miles times $0.51), yields the allowable cost per serve of $65.20.  Therefore, costs of $195.60 (three times $65.20) are taxed.  Eleven were served in 2010 and adding mileage of $10.00 (twenty miles times $0.50), yields the allowable cost per serve of $65.00.  Therefore, costs of $715.00 (eleven times $65.00) are taxed.

2. <u>Sub-Total</u>   The total costs taxed for service of subpoenas is $1,668.00.

B. <u>Fees for printed or electronically recorded transcripts necessarily obtained for use in the case</u>

1. <u>Trial transcripts</u> [10]

Section 1920(2) provides for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  "Trial transcription costs may

---

[8] Service on Lopresti Speed Merchants was made by service in Vero Beach, Florida and Sebastian, Florida at $40.00 per serve for a total of $80.00.

[9] Some of the invoices include "rush" fees or "same day service" fees.  However, 28 U.S.C. § 1921, which sets forth the fees that the U.S. Marshal may charge, does not authorize this type of fee.  Thus, they are disallowed.

[10] Plaintiffs identify $11,647.00 as the total cost.  However, an additional $1,600.00 was invoiced for a total of $13,247.15 (doc. 392-2, p. 2 and doc. 390-3, p. 3).

also be taxable under this subsection, but again only if truly necessary for presentation of the case at trial, and not solely for convenience of counsel." *Groves v. Royal Caribbean Cruises, Ltd.*, 2011 WL 817930, *2  (S.D. Fla., March 2, 2011) (citations omitted). This determination is made "on a case-by-case basis." *Id*.

    a.  <u>Transcript for the entire trial</u>

TCM seeks to recover costs of $13,247.14 for the trial transcript (doc. 392-2, p. 2). Plaintiffs object that the transcript was ordered after trial concluded, presumably for purpose of appeal, and was not obtained for use at trial.  TCM responds that these costs are recoverable because the trial transcript was necessary "to prepare proper responses to Plaintiffs' anticipated post-trial motions" and "to prepare TCM's motion for attorneys' fees" (doc. 414, p. 9-10).

Plaintiff s did not file post-trial motions.  Therefore, the trial transcript was not necessarily obtained to respond to post-trial motions but rather for convenience of counsel. Review of the motion for attorney's fees and the exhibits thereto, specifically Exhibit B (doc. 396-2, p. 15-28), shows that only ten pages of Larry Crouch's trial testimony were used in support of the motion.[11]  Awarding costs of the entire trial transcript would be unreasonable.[12] The costs of the trial transcript are not taxed.

    b.  <u>Specific trial transcripts</u>

TCM seeks to recover costs of $1,154.30 for transcripts of the trial testimony of plaintiffs' experts Mark Seader and William Carden. Plaintiffs do not specifically object, but

---

[11] In the motion for attorney fees, TCM refers to specific statements made by plaintiffs' counsel during opening and closing statements.  However, the transcripts of those statements were not attached to the motion.

[12] TCM appealed the denial of its motion for attorney's fees and costs. Thus, TCM may have another opportunity to obtain the costs of the trial transcript. *See* Fed. R. App. P. 39 (addressing taxation of costs on appeal).

make a blanket objection that TCM failed to explain why the trial transcripts were necessary in this case.  TCM argues that this transcript was necessary to prepare for the examination of its expert witnesses and to prepare its motion for judgment as a matter of law.  Since this transcript was necessarily obtained for use in this case, costs of $1,154.30 are taxed.[13]

    c.  <u>Sub-Total</u>   The total cost taxed for trial transcripts is $1,154.30.

    2.  <u>Transcripts from pre-trial hearings</u>

    a.  <u>Transcript from the hearing on the motions to exclude expert witnesses</u>

TCM seeks to recover costs of $122.00 for the transcript of part of the hearing on the motions to exclude expert witnesses held in this Court (the Daubert hearing) (doc. 392-2, p. 2). [14] Plaintiffs object that the transcript was of little use at trial because this Court issued a detailed order precisely stating which expert opinions were allowed.  Overall, plaintiffs object that this hearing did not clarify any trial issues.  TCM responds that the transcript was necessary for cross-examination and that the Daubert hearing clarified issues for trial because the Court ruled as to which expert testimony was excluded or limited.

Generally, "[w]here a Court's order or ruling on motions and discovery matters refers to the record of pretrial and discovery hearings, transcript copies of the hearings are deemed reasonably necessary and are recoverable costs to the prevailing party." *Caribbean I Owners' Assoc. Inc. v. Great American Ins. Co. of New York*, 2009 WL 2150903, *7 (S.D. Ala. July 13,

---

[13] The trial transcript appears to have been expedited since it was invoiced on July 25, 2011 during the trial (doc. 390-3, p. 2).  Generally, the costs of an expedited trial transcript are not allowed as a matter of course unless "necessary" in the case "given its length and complexity." *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002) (affirming award for costs of expedited transcripts).

[14] TCM also argues that these costs are minimal. As to the Daubert hearing transcript, the invoice indicates that TCM obtained only the "question and answer of Wartman" and the "cross-examination of Seader" for a total of $122.00 (doc. 390-3, copy of invoice).

2009)  (citations omitted).  This Court specifically referenced the hearing testimony of plaintiffs' experts Seader and Richard Wartman in its order  (*See* doc. 314).  Therefore, costs are taxed in the amount of $122.00 for the Daubert hearing transcript.

     b.  Transcript from the discovery motion hearing

     TCM seeks to recover costs of $176.55 for the transcript of the hearing on the motion for protective order held before Magistrate Judge Moyer in the Western District of Kentucky. Plaintiffs argue that because the hearing focused on a discovery issue - the potential destructive testing of the magneto - which was resolved before the case was transferred, this transcript was not necessarily obtained for use in the case.  Overall, plaintiffs object that this discovery hearing did not clarify any trial issues.  TCM responds that the transcript was necessary to respond to plaintiffs' objection to Judge Moyer's order and to respond if plaintiffs sought to modify the protective order in this Court.

     The docket from the Western District of Kentucky indicates that plaintiffs filed an objection to Judge Moyer's protective order and moved for a hearing on their objection, TCM filed a response, and plaintiffs filed a reply (doc. 1-3, docket sheet in *Crouch, et al, v. Honeywell International, Inc., et al*,  Civil Action No. 3:07-cv-00638-CRS-JDM at doc. 151 (order); doc. 157 (objection and motion for hearing); doc. 162 (response);  doc. 163 (reply)).  Thus, the discovery hearing transcript was necessarily obtained for preparation of TCM's response to plaintiffs' objection.  *See Luka v. City of Orlando*, 2011 W L 4837263, *6 -7  (M.D. Fla. Sept. 23, 2011) ("Hearing transcript costs are taxable when reasonably obtained 'in preparation for additional argument and/or motion practice.'") (quoting *U.S. Fire Ins. Co. v. Mikes*, 2008 WL 616102 at *3 (M.D. Fla. Mar. 3, 2008)).  Therefore, costs are taxed in the amount of $176.55 for discovery hearing transcript.

c. Sub-Total  The total cost taxed for pre-trial hearing transcripts is $298.55.

3. Deposition transcripts and exhibits

a. Deposition transcripts

Costs of deposition transcripts are also authorized by 28 U.S.C. § 1920(2). *See U.S.E.E.O.C., Inc.*, 213 F.3d at 620.  However, "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *Id*. (citations omitted).  Thus, the Court must look to "whether the deposition was wholly or partially 'necessarily obtained for use in the case[ ]'" but the focus is not on whether the deposition was actually used at trial. *Id*. at 621 (quoting *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. Unit B 1981)).  Admission into evidence or use for cross-examination "tends to show that it was necessarily obtained." *Id.*

Generally, deposition costs related to persons identified on the losing party's witness list are taxed. *U.S.E.E.O.C.*, 213 F.3d at 621 ("Taxation ... is reasonable because the listing of those witnesses indicated both that the plaintiff might need the deposition transcripts to cross-examine the witnesses, ... and that the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery[.]") (internal quotations and citations omitted); *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) ("'[t]axation of deposition costs of witnesses on the losing party's witness list is reasonable ...'  [B]ecause all of the depositions of which Maris complains were taken of people on Maris's witness list, the district court did not abuse its discretion by awarding these deposition-related costs.") (quoting *U.S.E.E.O.C.*, 213 F. 3d at 621).

TCM seeks to recover all costs for thirty-seven stenographic or video depositions in the total amount of $24,673.10 (doc. 392-2, p. 3).  Plaintiffs object to the costs of all depositions

except for the costs of five videotape depositions admitted into evidence at trial.[15]  Also,

plaintiffs specifically object to recovery of the following:

> The costs of deposition of two Rule 30(b)(6) corporate representatives and five officers or employees because they are parties or parties in interest;[16]

> costs of deposition of witnesses who testified on behalf of TCM at trial;[17]

> costs of deposition of plaintiffs' expert witnesses because these depositions were investigative since TCM knew plaintiffs intended for these expert witnesses to testify at trial;[18]

> costs of deposition of William Read because his deposition was taken when discovery was limited to jurisdictional issues and therefore, was not necessary for use at trial;[19]

> costs of the 2006 deposition of a person named James E. Hall but who was not the same person as plaintiffs' expert James Hall; and

> costs of deposition of plaintiffs' expert Robert Pearce because his testimony was excluded from trial and therefore, a transcript of this testimony was not necessary for use at trial.

 TCM responds that all deposition costs are recoverable as necessarily obtained because

all the depositions were used wholly or partially in the case.  TCM also argues that each

deposition was taken of a witness on plaintiffs' witness list[20] and the deposition transcripts were

---

[15]  Ron Roberts, Charles Holsclaw, Gregory Brothers, Jody McCubbins and Linda Nalley.

[16]  Tim Davis and Beverly Holbert (the Rule 30(b)(6) designees) and Mike Ward, Rhett Ross, John Barton, Bill Brogdon, and Johnny Doo.

[17]  Tim Davis, Mike Ward, William Read and John Barton.

[18]  Bernard Coogan, Mark Seader, Richard Wartman, William Carden, Robert Pearce, and Robert Cauble (plaintiffs' experts).

[19]  Discovery in the District Court in the Western District of Kentucky was limited to jurisdiction over TCM.

[20]  Comparing doc. 392-2, p. 3 with doc. 226, p. 1-3.

necessary for cross-examination should any listed witness testify at trial.  TCM also argues that

eight witnesses testified at trial or by video deposition and the costs of transcripts for those

depositions should be taxed because transcripts were provided to the Court.[21] TCM also argues

that when it notices the deposition, it is entitled to the cost of one copy as well as the costs of the

original deposition transcript because the original must be sealed and cannot effectively be used

for trial preparation.

> As to plaintiffs' specific objections to certain witnesses, TCM responds as follows:
>
> Costs as to two Rule 30(b)(6) corporate representatives and five officers or
> employees should be taxed because they were on plaintiffs' witness list;
>
> costs as to witnesses who testified on behalf of TCM at trial should be taxed
> because they were on plaintiffs' witness;
>
> costs as to plaintiffs' expert witnesses should be taxed because the experts were
> on plaintiffs' witness list and the depositions were necessary for cross-
> examination since each expert was called to testify at trial;
>
> costs as to William Read should be taxed because his deposition was obtained to
> defend plaintiffs' opposition to TCM's motion to dismiss for lack of personal
> jurisdiction and because he was included on plaintiffs' witness list;
>
> costs of the 2006 deposition of a person named James E. Hall should be taxed
> because plaintiffs' expert witness Hall was not deposed and TCM reasonably
> sought information about his prior testimony in other cases; and
>
> costs of deposition of plaintiffs' expert Robert Pearce should be taxed because
> TCM used his deposition testimony to successfully obtain exclusion from trial.
>
> The Court finds that because all of the witnesses deposed were on plaintiffs' witness list[22]

---

[21]  David Seligson, Monte Rommelman, John Johnson, Linda Nalley, Jody McCubbin, Gregory Brothers, Ron Roberts, and Charles Hoslclaw.

[22] TCM's corporate representatives, officers and employees were on plaintiff's witness list. Although their depositions may be "party" depositions, these costs may be taxed because it was "reasonably necessary" for TCM's counsel to obtain a copy of the clients' deposition testimony "in order to protect" the client by "holding the impeachment within proper limits". *Preis v. Lexington Ins. Co.*, 2007 WL 3120268, *2 (S.D. Ala. Oct. 22, 2007) (citing (Continued)

and most if not all of the depositions were used either at trial or in support of pre-trial motions,[23] TCM is entitled to recover certain deposition costs to be specified herein, including the costs of the original deposition and one copy if noticed by TCM[24] and the costs of a copy if the deposition was noticed by plaintiffs.[25]  *See Durden v. Citicorp Trust Bank, FSB*, 2010 WL 210591, *2 (M.D. Fla. Apr. 26, 2010) ("The deposition transcripts are readily resolved. All costs sought are for depositions of witnesses who appeared on Plaintiff's witness list.").   However, the Court must address other limitations upon its authority to tax costs.

    b.  Limitations on costs

    Plaintiffs object to recovery of the costs of synchronization of video depositions to their respective transcripts[26] on basis that these costs were incurred only for the convenience of counsel.  TCM argues that these costs are recoverable because synchronization conserves time and assists the jury when the video deposition is presented to the jury.  Generally,

---

*U.S.E.E.O.C.,* 213 F. 3d at 622).

[23] Many of these depositions were used in support of or in response to the parties' respective motions for summary judgment or other pre-trial motions such as the motions to exclude expert witnesses. *See U.S.E.E.O.C.*, 213 F. 3d at 621 ("A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions.") (internal quotations omitted).

[24] TCM noticed the depositions of Larry Crouch, John Jewell, Ron Roberts, Bernard Coogan, Mark Seader, Richard Wartman, William Carden, Robert Pearce, Charles Holsclaw, Robert Cauble, Gregory Brothers, Jody McCubbins, and Linda Nalley (doc. 409, n. 5).

[25] Plaintiffs noticed the depositions of William Read, Shawn Jewell, John Jewell (also deposed by TCM), Charlotte Sanders, Tim Davis, Beverly Holbert, Mike Ward, Bill Brogdon, Johnny Doo, Rhett Ross, Ken Smith, Daniel Nicholas and John Barton (deposed twice), Robert Marwill, Kenneth Orloff, Norman Alvares, John Morris, David Seligson, Monte Rommelman, and John Johnson (doc. 409, p. 13).

[26] The invoice for the video depositions of William Brogdon, Ken Smith and Johnny Doo contains a charge of $440.00 for synchronization (doc. 390-4, p. 14).

synchronization is not considered a taxable cost under 28 U.S.C. § 1920.  *See In re Scientific-Atlanta, Inc. Securities Litigation*, 2011 WL 2671296, *1 (N.D. Ga. July 6, 2011) (sustaining plaintiff's objections to "costs of video [and] synchronization", upon finding that these costs were for the convenience of counsel and not authorized by 28 U.S.C. § 1920).  Also, "given the Eleventh Circuit's strict adherence to the language of section 1920, it appears likely that the Court would find that an award of [costs of synchronization] is not permitted by the section." *Powell v. The Home Depot, U.S.A., Inc.* 2010 WL 4116488, 12-13 (S.D. Fla. Sept. 14, 2010) (citing *U.S.E.E.O.C.*, 213 F.3d at 620 for the premise that courts may only tax costs as authorized by statute and citing *Crawford Fitting Co.*, 482 U.S. at 445 and *Arcadian Fertilizer, L.P.*, 249 F.3d at 1296-1297 (same)).  Therefore, the Court will not tax costs for synchronization of video depositions to their respective transcripts.

Plaintiffs object to costs of obtaining condensed or mini-transcripts on basis that these are for the convenience of counsel.  TCM argues that the form of the copy of the transcript - paper or electronic (such as an emailed copy or a copy on a CD) - is not relevant, only that costs should be taxed for one copy of the original.  As previously stated, TCM is entitled to recover the costs of one copy in any form, but the Court will not tax costs for any additional condensed or mini-transcripts, electronic transcripts, videotapes, or CD containing transcripts.  *See Powell*, 2010 WL 4116488, at *8 (allowing one copy of a DVD deposition under § 1920(4)).

Also, the Court will not tax delivery costs. "Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable." *Gary Brown & Associates, Inc. v. Ashdon, Inc.*, 268 Fed.Appx. 837, 845 (11th Cir. 2008) (finding that courier and postage fees are not recoverable under § 1920); *New Hampshire Ins. Co v. Blue Water OffShore, LLC*, 2009 WL 2762814, *2 (S.D. Ala. Aug. 28, 2009) (quoting *Kerns v. Pro–Foam,*

*Inc.*, 2007 WL 2710372 at *3 (S.D. Ala. Sept. 13, 2007) (internal quotes omitted)).

 c. Deposition exhibit copy costs

 Pursuant to 28 U.S.C. § 1920(4), "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" may be taxed.  Generally, costs for color copies are also allowed but the per page rate must be reasonable.  *See Arcadian Fertilizer, L.P.*, 249 F.3d at 1293).  Also, "in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  *U.S. E.E.O.C.*, 213 F.3d at 623.  In that regard, the Court may look to "the purpose of the copies" or "whether the party otherwise had access to the exhibits".  *Spatz*, 2012 WL 1587663 at *6.  Generally, "when challenging whether [deposition exhibit copy] costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed costs is a matter within the exclusive knowledge of the prevailing party."  *Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, 2011 WL 5358548, *3 (M.D. Fla. Oct. 17, 2011) (citation omitted) (adopted *Competitor Liaison Bureau, Inc. v. Cessna Aircraft, Co.*, 2011 WL 5358668 (M. D. Fla. Nov. 7, 2011).

 TCM as the prevailing party, "must present evidence showing the nature of the documents copied, including how they were used or intended to be used in the case and may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made."  *Id.*, quoting *Helms v. Wal–Mart Stores, Inc.*, 808 F.Supp. 1568, 1570 (N.D. Ga. 1992) (internal quotations omitted). Costs of copies for the convenience of counsel are not allowed. *Id.*

 Plaintiffs argue that the costs of copies of deposition exhibits especially the color copies are not recoverable because TCM failed to show that these copies were not made for the

16

convenience of counsel.  Plaintiffs also assert that if costs are allowed, they should be taxed at a reasonable rate.  TCM responds that because the deponents were all witnesses on plaintiffs' witness list, it is entitled to recover the costs related to the depositions including deposition exhibits.  TCM also argues that deposition exhibits "are a critical part of the deposition" and "[w]ithout the deposition exhibits" it "does not have a complete and accurate version of the deposition." (Doc. 414, p. 20)

In view of the complex issues, the number of expert witnesses deposed, and the volume of documents produced, TCM could reasonably need a copy of the deposition exhibits in order to obtain a complete and accurate version of the deposition. *See Competitor Liaison Bureau, Inc.,* 2011 WL 5358548, at *4 ("In light of the complexity of issues, numerosity of witnesses and documents, Cessna's argument that it was reasonable and necessary to copy the exhibits attached to the depositions is persuasive").

However, the costs must still be reasonable. *Id*. (finding the per page copy rates were unreasonable).  In that regard, plaintiffs argue that $0.10 per page, as invoiced by TCM's outsource copy provider for black and white copies, is reasonable. TCM did not respond to this argument.  However, taxing as costs the per page rate invoiced to TCM by its outsource copy provider appears reasonable in this circumstance.[27]  *See Competitor Liaison Bureau, Inc.,* 2011 WL 5358548, at *5 (Cessna did not address "the argument that the court reporter's copying charges were inflated" and "Cessna's own bill of costs reflects that it paid $0.10 per page for

---

[27] ProLegal Copies generally invoiced TCM's counsel $0.10 per page for letter size black and white copies and $0.99 per page for letter size color copies (doc. 390-7).  Although Plaintiffs argue that $0.10 is a reasonable cost for black and white copies, they did not argue that $0.99 per page was reasonable for color copies.  In addressing costs of copies generally, plaintiffs argue that $0.50 per page is reasonable for color copies.  However, the Court finds that costs of $0.99 per page for letter size color copies is reasonable because ProLegal Copies generally invoiced $0.99 for most color copies (occasionally invoicing $0.69 and $0.79) (doc. 390-7).

copying its trial exhibits" in contrast to the $.50 per page invoiced by the court reporter).

    d.  Itemization of costs taxed as to each deponent

    Upon consideration of the foregoing, the following costs are taxed:

    1.[28] William Read.  Costs are taxed in the amount of $483.15 for one copy of the deposition of William Read, Vice President of Finance and Chief Financial Officer at TCM (doc. 392-4, p. 1).  TCM obtained a copy of Read's deposition in order to defend plaintiffs' opposition to TCM's motion to dismiss for lack of personal jurisdiction.  Although plaintiffs assert that Read's deposition was not necessary for use at trial, the statute requires that a deposition be necessary for use in the case. 28 U.S.C. § 1920(2) (allowing "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case").  Read was on plaintiffs' witness list and plaintiffs noticed the deposition.

    2, 3, 4.  Shawn Jewell, John Jewell and Charlotte Sanders.  Costs are taxed in the amount of $186.50, $87.50 and $230.00 for a total of $504.00 for one copy of each deposition transcript (doc. 392-4, p. 2). John Jewell owned John Jewell Aircraft, Inc., the company that overhauled the engine on Crouch's airplane.  Shawn Jewell and Sanders were employees of Jewell. These deponents were on plaintiffs' witness list and plaintiffs noticed the depositions.  Delivery costs ($30.00) are not taxed.

    5.  Beverly Holbert.  Costs are taxed in the amount of $390.65 for one copy of the deposition transcript (doc. 390-4, p. 1).  Holbert, a manufacturing engineer at TCM, was a designated Rule 30(b)(6) corporate representative.  She was on plaintiffs' witness list and plaintiffs noticed the deposition.

    6.  Tim Davis.  Costs are taxed in the amount of $391.40 for one copy of the deposition

---

    [28]  The numerical order follows that of TCM's amended itemization (doc. 392-2, p. 3).

transcript (doc. 390-4, p. 3).  Davis, a project engineer at TCM, was a designated Rule 30(b)(6)

corporate representative.  He was on plaintiffs' witness list and plaintiffs noticed the deposition.

7.  <u>Larry Crouch</u>.  Costs are taxed in the amount of $378.00 for the original and one copy

of the deposition transcript, the per diem[29]costs of $200.00, and costs of copies of deposition

exhibits in the amount of $1.60[30] for a total of $579.60 (doc. 390-4, p. 5).  The deposition was

noticed by TCM.

8.  <u>Larry Crouch</u>.  Costs are not taxed for the videotape of the deposition and the

videographer attendance fee in the total amount of $425.00 (doc. 390-4, p. 6). *See New*

*Hampshire Ins. Co v. Blue Water Off Shore*, LLC, 2009 WL 2762814, *2 (S.D. Ala. Aug. 28,

2009) ("Absent proof that the deposition was noticed as a video deposition, only the cost of the

stenographic transcript can be allowed. [ ] The defendant has not submitted the deposition

notices, so it has failed to show that it noticed the depositions as video depositions. Accordingly,

it may recover only the court reporter costs.") (citing *Morrison v. Reichold Chemicals, Inc.*, 97

F.3d 460, 464–65 (11th Cir.1996) ( "[W]e hold that, when a party notices a deposition to be

recorded by nonstenographic means [including by video], or by both stenographic and

nonstenographic means, and no objection is raised at that time by the other party to the method

of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920

to award the cost of conducting the deposition in the manner noticed."))  Additionally, TCM

must also explain "why it was necessary to obtain a copy of the videotapes for use in the case" in

---

[29]  *Byrd v. Auburn University At Montgomery*, 2007 WL 1441161, 1 (M.D. Ala. Mar. 16,
2007)  ("The attendance fee for the court reporter [is] recoverable pursuant to 28 U.S.C. §
1920(2)."); *DuChateau*, 2012 WL 1069166, at *2 ("Recoverable costs include deposition-
transcript fees and attendance fees of the court reporter or per diem.") (citing *Ferguson v.
Bombardier Servs. Corp.*, 2007 WL 601921, at *4 (M.D. Fla. Feb. 21, 2007)).

[30]  Sixteen black and white copies at $0.10 per page.

order to obtain costs for both a videotape and a transcript. *Morrison*, 97 F. 3d at 465.

9, 10.  John Barton and Mike Ward. Costs are taxed in the total amount of $681.50 for one copy of each deposition (doc. 390-4, p. 8).  Barton, a former Senior Vice President of Engineering and Technology at TCM, and Ward, Director of Compliance at TCM, were on plaintiffs' witness list and plaintiffs noticed the depositions.  Costs are not taxed for the condensed copy of the depositions ($50.00) and delivery costs ($8.00).

11.  John Jewell.  Costs are not taxed in the amount of $520.00 for one videotape of the deposition or for "tape stock" ($15.00) and "DVD/DVT" ($10.00)  (doc. 390-4, p. 11). (*See* paragraph 8).

12.  John Jewell.  Costs are taxed in the amount of $846.45 for the original and one certified copy of the deposition transcript, an appearance fee in the amount of $220.00 (doc. 390-4, p. 12), and costs of copies of deposition exhibits in the amount of $32.72,[31] for a total of $1,099.17.  Jewell was on plaintiffs' witness list.  His deposition was noticed by TCM.

13, 14, 15.  Bill Brogdon, Ken Smith, and Johnny Doo.  Costs are taxed in the amount of $275.00, $112.50 and $100.00 for a total of $487.50 for one copy of their deposition (doc. 390-4, p. 14).  Brogdon was a Chief Engineer at TCM, Doo was a Vice President of Engineering and Product Integrity at TCM and Smith was an engineering consultant for TCM.  They were on plaintiffs' witness list and plaintiffs noticed their depositions.  Costs are not taxed for synchronization of the video to the transcript ($440.00).

16.  Ron Roberts.  Costs are taxed in the amount of $200.00 for the videotape deposition plus $85.00 per diem and $34.78 for copies of exhibits for a total of $319.78 (doc. 390-4, p. 16;

---

[31] Eight color copies at $0.99 per page ($7.92) and 248 black and white copies at $0.10 per page ($24.80) for a total of $32.72.

(doc. 390-7, p. 37; doc. 392-2, p. 6).  Roberts was CEO and owner of Electronics International Inc., the company that manufactured the engine analyzer on Crouch's airplane.  His video deposition was played for the jury and admitted into evidence at trial. Roberts was on plaintiffs' witness list.  The deposition was noticed by TCM.

17.  Bernard Coogan.  Costs are taxed in the amount of  $1,165.25 for the original deposition transcript and a complimentary copy plus an appearance fee of $160.00, and $96.96 for copies of exhibits[32] for a total of $1,422.21 (doc. 390-4, p. 20; doc. 390-7, p. 49).  Coogan was on plaintiffs' expert witness list.  The deposition was noticed by TCM.  Costs are not taxed for "C.O.D./Postage/Handling" ($30.00).

Invoice for $118.37, taxed in part ($96.96). The description on the invoice and the itemization indicate that copies of "Coogan's Exhibits" were scanned to a CD (doc. 390-7, p. 49). Therefore, costs are taxed in the amount of $96.96 for one copy of the deposition exhibits. However, expenses for transfer of data to a CD and tabs are not allowed.  TCM is entitled to costs for either a CD copy or a paper copy but not both.

18.  Mark Seader. Costs are taxed in the amount of $1,027.00 for the original deposition transcript and a complimentary copy plus an appearance fee of $110.00, for a total cost of $1,137.00 (doc. 390-4, p. 22).  Seader was on plaintiffs' expert witness list.  The deposition was noticed by TCM.  Costs are not taxed for "C.O.D. Postage/Handling" ($30.00).

19, 20.  Richard Wartman and William Carden. Costs are taxed in the amount of $962.50 and $1,235.85 for the two deposition transcripts plus a per diem of $200.00, for a total of

---

[32] TCM was invoiced a total of $118.37. The description on the invoice and the itemization indicate that copies of "Coogan's Exhibits" were scanned to a CD (doc. 390-7, p. 49).  Costs are taxed in the amount of $96.96 for one copy of the deposition exhibits. TCM is entitled to costs for either a CD copy or a paper copy but not both.  The expenses for transfer of data to the CD and tabs are not allowed.

$2,398.35 (doc. 390-4, p. 24).  Wartman and Carden were on plaintiffs' expert witness list.
Their depositions were noticed by TCM.  Because the Court cannot ascertain a reasonable per
page rate for copying the deposition exhibits, costs of $287.83 are not taxed.  The invoice does
not state how many pages of exhibits were copied.  The invoice reads "Exhibits B/W $160.08"
and "Color Copies $127.75" (doc. 390-4, p. 24).  Also, costs are not taxed for "Duplication of
CDs" ($75.00).

21.  Robert Pearce.  Costs are not taxed in the amount of $1,950.25.  Pearce's deposition
testimony was used to support the motion to exclude and he was on plaintiffs' expert witness list.
However, the invoice does not itemize the services performed and therefore, does not contain
sufficient information for the Court to perform an adequate review.  The invoice states only
"COD depo R. Pearce" (doc. 390-4, p. 27).  There is no breakdown as to what part may have
been a taxable cost or what part may have been a non-taxable cost such as shipping costs,
delivery charges, or synchronization.  *Gary Brown & Associates, Inc.*, 268 Fed. Appx. at 845-
846 (" The district court also found that a general $4,602.90 charge for deposition transcripts
lacked the requisite specificity . . . As before, we find no abuse of discretion.").

22.  Charles Holsclaw.  Costs are not taxed in the amount of $1,359.65 (doc. 390-4, p.
29).  Holsclaw was on plaintiffs' expert witness list.  His video deposition was used in the case
because it was played for the jury and admitted into evidence at trial.  However, the invoice does
not contain sufficient information for the Court to perform an adequate review (doc. 390-4, p.
33).  The invoice states only "Appearance of Reporter Charles B. Holsclaw Sr." and a "Total
Amount". (*Id*.)  There is no breakdown as to what part may have been a taxable cost or what part
may have been a non-taxable cost such as shipping costs, delivery charges or synchronization.
*Gary Brown & Associates, Inc.*, 268 Fed. Appx. at 845-846.

23.  Robert Cauble. Costs are taxed in the amount of $588.00 for an original and one copy of the deposition transcript, an attendance fee in the amount of $185.00, and costs of copies of deposition exhibits in the amount of $11.00, [33] for a total of $784.00 (doc. 390-4, p. 31). Cauble was on plaintiffs' expert witness list. The deposition was noticed by TCM. Costs are not taxed for "Compact Disk" ($60.00) and "Postage & Handling" ($20.47).

24, 25, 26.  Gregory Brothers, Jody McCubbin and Linda Nalley.  Costs are not taxed in the amount of $2,399.45 for copies of these depositions (doc. 390-4, p. 33). The depositions were noticed by TCM. The video depositions were played for the jury and admitted into evidence at trial. However, the invoice does not contain sufficient information for the Court to perform an adequate review (doc. 390-4, p. 31). The invoice states only "Appearance of Reporter" for each witness and a "Total Amount" for all three depositions. (*Id.*) There is no breakdown as to what part may have been a taxable cost such as the costs of the deposition transcript or the video tape or what part may have been a non-taxable cost such as shipping costs, delivery charges or synchronization. *Gary Brown & Associates, Inc.*, 268 Fed. Appx. at 845-846.

27.  Douglas Marwill.  Costs are taxed in the amount of $1,885.95 for a copy of the deposition transcript and costs of copies of deposition exhibits in the amount of $57.30,[34] for a total amount of $1,943.25 (doc. 390-4, p. 37). Marwill, one of TCM's expert witnesses, was on plaintiffs' witness list and plaintiffs noticed his deposition. Costs are not taxed for "ASCII or Condensed" ($29.50) and "Shipping & Handling" ($37.50).

28, 29.  Daniel Nicholas and John Barton.  Costs are taxed in the amount of $180.00 for a

---

[33]  One hundred and ten black and white copies at $0.10 per copy.

[34]  The invoice for 573 copies did not separate color copies from black and white copies. Thus, the lower rate per page, $0.10, was applied.

copy of Nicholas' deposition transcript, costs of $560.25 for a copy of Barton's deposition

transcript (doc. 390-4, p. 39), and costs of copies of deposition exhibits in the amount of

$12.49,[35] for a total of $752.74.  Nicholas, an employee of TCM, and Barton testified on behalf

of TCM.  They were on plaintiffs' witness list and plaintiffs noticed their depositions.  Costs are

not taxed for condensed transcripts ($20.00), "Depo disk" ($15.00) and "Courier Delivery

($10.50).

     30.  <u>Kenneth Orloff</u>.  Costs are taxed in the amount of $594.25 for a copy of his

deposition transcript (doc. 390-4, p. 42) and costs of copies of deposition exhibits in the amount

of $14.00,[36] for a total of $608.25.  Orloff, one of TCM's expert witnesses, was on plaintiffs'

witness list and plaintiffs noticed his deposition.  Costs are not taxed for "Shipping & Handling"

($20.00), "ASCII" ($17.50), and "CD copies" ($35.00).

     31.  <u>Norman Alvares</u>.  Costs are taxed in the amount of $592.00 for a copy of his

deposition transcript (doc. 390-4, p. 44) and costs of copies of deposition exhibits in the amount

of $77.73,[37] for a total of $669.73.  Alvares, one of TCM's expert witnesses, was on plaintiffs'

witness list and plaintiffs noticed his deposition.  Costs are not taxed for "Shipping & Handling"

($20.00) and "Special Binding of Transcript" ($22.50).

     32.  <u>John Morris</u>.  Costs are taxed in the amount of $685.00 for a copy of his deposition

transcript (doc. 390-4, p. 46) and costs of copies of deposition exhibits in the amount of $3.47,[38]

---

[35] One hundred fifteen black and white copies ($11.50) and one color copy ($0.99).

[36] Forty one black and white copies ($4.10) and ten color copies ($9.90).

[37] Two hundred thirteen black and white copies ($21.30) and fifty-seven color copies ($56.43).

[38] Five black and white copies ($0.50) and three color copies ($2.97).

24

for a total of $688.47.  Morris, one of TCM's expert witnesses, was on plaintiffs' witness list and plaintiffs noticed his deposition.  Costs are not taxed for "CD copies" ($35.00) and "shipping and handling" ($20.00).

33.  <u>Rhett Ross</u>.  Costs are taxed in the amount of $130.50 for a copy of his deposition transcript (doc. 390-4, p. 48) and costs of copies of deposition exhibits in the amount of $1.20[39] for a total of $131.70.  Ross was President of TCM at the time of this litigation.  He was on plaintiffs' witness list and plaintiffs noticed his videotape deposition.  Costs are not taxed for a "condensed copy" ($10.00), "depo disk" ($15.00) and "Courier delivery" ($10.50).

34.  <u>David Seligson, M.D.</u>  Costs are taxed in the amount of $45.00 for a copy of his deposition transcript (doc. 390-4, p. 50) and $5.90 for copies of the deposition exhibits (doc. 390-7, p. 92),[40] for a total of $50.90.  Dr. Seligson was on plaintiffs' witness list and plaintiffs noticed his deposition. Plaintiffs played the videotape for the jury.

35.  <u>Monte Rommelman, M.D.</u>  Costs are taxed in the amount of $128.25 for a copy of his deposition transcript (doc. 390-4, p. 52) and $5.30 for a copy of his deposition exhibits (doc. 390-7, p. 91),[41] for a total of $133.55.  Dr. Rommelman was on plaintiffs' witness list and plaintiffs noticed his deposition.  Plaintiffs played the videotape for the jury.

36.  <u>John Johnson, M.D.</u>  Costs are taxed in the total amount of $74.25 for a copy of his deposition transcript (doc. 390-4, p. 54) and $4.60 for a copy of his deposition exhibits (doc. 390-7, p. 90),[42] for a total of $133.55.  Dr. Johnson was on plaintiffs' witness list and noticed his

---

[39] Twelve black and white copies at $0.10 per page.

[40] Fifty-nine copies at $0.10 per page.

[41] Fifty-three copies at $0.10 per page.

[42] Forty-six copies at $0.10 per page.

deposition.  Plaintiffs played the videotape for the jury.

37. James Hall.  Costs are not taxed in the amount of $19.40 for the copy of the deposition of James E. Hall.  The deposition transcript copy is not related to an issue in this case because the deponent was not plaintiffs' expert witness.  Also, purchase of the transcript was for investigation purposes only. *See U.S. E.E.O.C.*, 213 F. 3d at 622 (taxing costs where depositions were "related to an issue in the case when the depositions were taken."); *Id.* at 620 (costs are not taxed "[w]here the deposition costs were . . . for purposes of investigation only"); *Pickett v. Tyson Fresh Meats, Inc.*, 2004 WL 3712721, 5 (M.D.  Ala. Aug. 3, 2004) ("Although it may have been prudent for counsel to obtain Tab 130, a transcript from another case, the Court finds that the costs for such transcript should not be taxed to plaintiffs.").

e. Sub-Total  The total cost taxed for deposition transcripts and exhibits is $15,735.75.

C.  Fees for witnesses

Pursuant to 28 U.S.C. § 1920(3), the Court may tax costs for "fees and disbursements for ... witnesses."  Witness fees are set by 28 U.S.C. § 1821(b) which explains that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance" at trial or deposition. The statute also provides for payment of mileage where the witness uses their private car. 28 U.S.C. § 1821(c)(2) ("A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle."). Payment is generally mandatory. 28 U.S.C. § 1821(a)(1) ("Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by

this section.").

    1.  <u>Fees for witnesses for attending depositions</u>

TCM seeks to recover the $40.00 witness fee for twelve depositions of eleven witnesses plus travel expense (mileage)[43] for a total of $726.87 (doc. 392-2, p. 4).   TCM argues that all deponents were on plaintiffs' witness list and that the witness fees and expenses were necessarily incurred and properly documented.   Plaintiffs argue that TCM's documentation as to four deponents is not sufficient because the check stubs submitted by TCM do not identify the deponent and the mileage does not match TCM's itemization. (Compare doc. 390-5 with doc. 392-2, p. 4, itemization).

    a.  <u>Brothers, McCubbin, Nalley and Burress.</u>

Brothers, McCubbin, Nalley and Burress were on plaintiffs' witness list.   Burress was not deposed.   Brothers, McCubbin and Nalley were deposed and their videotape depositions were admitted at trial.   Their depositions were necessarily obtained for use in this action and TCM is entitled to recover the attendance fees and mileage actually paid to Brothers, McCubbin and Nalley.   Also, even though Burress was not deposed, TCM presented documentation that he was paid a witness fee and mileage.   In support, TCM provides copies of four check stubs showing payment of $46.12 to Brothers, McCubbin, Nalley, and Burress on March 3, 2011 (doc.  390-5).   Thus, the four deponents were identified.   As to the discrepancy in mileage, TCM itemized $12.24, which was double the $6.12 actually paid to the deponents (compare doc. 390-5 with doc. 392-2, p. 4).   Therefore, costs are taxed in the amount actually paid to these four deponents for a total of $184.48 ($46.12 x 4 = $184.48).

    b.  <u>The remaining deponents</u>

---

[43] TCM applied the 2010 and 2011 mileage rates as appropriate.

As to the remaining deponents, plaintiffs argue generally that TCM did not provide sufficient documentation to verify the accuracy and reasonableness of the witness fees.  TCM responds that its itemization of the $40.00 attendance fee and the travel expense/mileage is sufficient documentation (doc. 392-2, p. 4, itemization).   Since the Court found that the actual amount paid to Brothers, McCubbin, Nalley and Burress for mileage was less than the amount itemized by TCM, the Court cannot rely on TCM's itemization as to mileage.[44]  Also, TCM did not provide any check stubs for the remaining deponents.  Thus, payment of the $40.00 witness fee for the remaining witnesses is not documented.  However, the Court will presume that TCM followed the statute and paid its deponents the $40.00 attendance fee.  Therefore, costs are taxed in the amount of $320.00 (8 deponents x $40.00).

    c.  <u>Sub-Total</u>   The total cost taxed for witnesses attending depositions is $504.48

    2.  <u>Fees for witnesses for attending trial</u>

In addition to the "fee of $40 per day for each day's attendance", 28 U.S.C. §1821(b) provides, in relevant part, as follows:

> (c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

> (2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph

---

[44] There was a discrepancy between TCM's itemization of mileage and the mileage on the four check stubs.  Also, no miles are itemized for Norman Alvares but $52.80 is requested.  As to Kenneth Orloff, 97.3 miles are itemized.  Multiplying $0.51 times 97.3 equals $49.62, but mileage costs of $99.25 are requested.

shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

28 U.S.C. §1821(c), (d)(1) & (2).

Additionally, an award of costs for travel beyond the 100 mile subpoena power of the

Court is within this Court's discretion.  As explained in *Smith v. Board of School Com'rs of*

*Mobile County*, 119 F.R.D. 440 (S.D. Ala. 1988):

> Plaintiffs apparently seek to impose upon this Court's power to tax costs for travel expenses a strict limitation involving the 100–mile area within which the Court is authorized to issue subpoenas under Fed.R.Civ.P. 5(e). [ ] Such a strict application of the 100–mile rule, however, has been rejected by the Supreme Court and it is now clear that the 100–mile rule must only be considered by the Court in the exercise of its discretion to tax travel expenses. *See, e.g., Goodwin Brothers Leasing, Inc. v. Citizens Bank*, 587 F.2d 730, 734 (5th Cir.1979), in which the Court discussed the Supreme Court's admonitions in *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964) as applied in subsequent cases. The current status of the law appears to indicate that the taxation of witness travel costs should be limited to 100 miles absent special circumstances which include, but are not limited to, the relevance and necessity of the witnesses' testimony and the existence of court approval before the incurrence of the travel expenses. . . .  Although prior approval by the Court of the travel expenses of those witnesses residing more than 100 miles from the Court was not obtained, plaintiffs do not contend, nor could they, that the testimony of these witnesses was irrelevant and unnecessary. The expenses claimed are not so unexpected in this case as to cause the Court to place greater emphasis upon the failure to obtain prior approval than upon the relevance and necessity of the

witnesses' attendance. . . .   The Court shall, therefore, tax as costs all of the travel
expenses claimed by the prevailing parties.

*Smith*, 119 F.R.D. at 445 (some internal citations omitted) (footnote omitted).

"In determining whether special circumstances exist, the court considers the relevance

and necessity of the witness's testimony, the existence of court approval before incurrence of the

travel expenses, and whether the movant seeking costs could have obtained similar testimony

from witnesses residing closer." *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters North

America, Inc.*, 2010 WL 3419816, *5-6  (M.D. Fla. July 29, 2010) (citing *Goodwall Constr. Co.

v. Beers Constr. Co.*, 824 F. Supp. 1044, 1057 (N.D. Ga. 1992)).

TCM seeks to recover witness fees and travel expenses for attendance at trial in the total

amount of $15,805.59 (doc. 392-2, p. 5).  TCM argues that it provided sufficient documentation

for all travel expenses and that all of its witnesses' expenses are reasonable because "the costs

incurred are the rates charged by the particular airline, hotel or other service provider used by

that particular witness" (doc. 414, p. 26).  TCM places the burden on plaintiffs to show that the

costs are not reasonable because "the losing party bears the burden of proof as to items that are

not within the exclusive knowledge of the prevailing party" (*Id.*)  TCM also argues that special

circumstances exist because six of the seven witnesses were TCM's experts and TCM would

have been disadvantaged had its experts not testified at trial.

Plaintiffs argue that TCM's documentation as to airfare, parking, taxi, and subsistence

expense for all witnesses is not sufficient and the costs are not reasonable.  They also argue that

TCM has not established any special circumstances upon which the Court could base an award

of the actual costs of travel expenses for travel beyond the Court's 100-mile subpoena power.

a.  $40.00 per day attendance fee

As an initial consideration, the Court allows the $40.00 per witness fee required by 28

U.S.C. § 1821(b), which explains that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance" at trial.  Plaintiffs do not dispute that these witnesses actually testified at trial.[45]   Therefore, these costs are taxed in the amount of $360.00.

      b. George Durham - Travel expense $669.81 (doc. 390-6, p. 18)

TCM did not respond to plaintiffs' objection to the $669.81 cost for fuel for Durham's personal airplane except to argue that all of the actual costs submitted were reasonable, allowable, and should be taxed.  Plaintiffs point out that the statute does not contemplate travel by personal aircraft but instead only commercial aircraft and personal vehicle (mileage).  *See* 28 U.S.C. §1821(c)(1) & (c)(2).  Since there does not appear to be statutory authorization for fuel costs of a private airplane and TCM has not provided the Court with any legal argument on this issue, the costs of Durham's fuel are not taxed.

      c. Norman Alvares - Travel expenses $3,129.00  (doc. 390-6, p.1-9)

Alvares traveled more than 100 miles to attend trial.  However, the Court finds that special circumstances exist in that Alvares was one of TCM's expert witnesses and his testimony was relevant and necessary.  Therefore, travel expenses will be allowed as appropriate.

TCM submits Alvares' airline invoice that shows two segments of his flight (round trip San Francisco-Houston) were purchased at the business class rate and two segments (round trip Houston-Mobile) were purchased at the economy class rate for a total of $2,535.12.  However, the invoice does not separate the costs of each flight. In general, business class is not the most economical rate reasonably available.  28 U.S.C. § 1821(c)(1) ("Such a witness shall utilize a common carrier at the most economical rate reasonably available."); *Woods v. Deangelo Marine Exhaust Inc.,* 2010 WL 4116571, *9 (S.D.Fla. Sept. 27, 2010) (citations omitted) ("common

---

[45]   Barton and Marwill attended trial on two days each.

carrier expenses" are limited to the "most economical rate reasonably available").

Because the documentation is not sufficient to establish the most economical rate for round trip travel by common carrier between San Francisco, California and Houston, Texas, the cost of Alvares' air travel $2,535.12 is reduced by 50%, and taxed to plaintiffs in the amount of $1,267.56 plus the $40.00 travel agent fee for a total of $1,307.56. *Aguiar v. Natbony*, 2011 WL 4387180, 2 (S.D. Fla., Sept. 20, 2011) (overruling objections and adopting the magistrate judge's recommendation to reduce by 50% the airfare of a witness who "did not provide proof of the 'most economical rate reasonably available'"); *see also Moncus v. Johanns*, 2006 WL 1180950, 3 (M.D. Ala. May 2, 2006) (Because Mr. Winningham's ticket was nearly twice as expensive as Ms. Moore's and Ms. Nelson's tickets and because the government has made no showing that his ticket was purchased at 'the most economical rate reasonably available,' the Court finds that the government is only entitled to recover $514.20 for Mr. Winningham's airline travel.") (allowing the rate paid for Moore and Nelson's tickets).

TCM submits receipts for Alvares' subsistence: $200.06 for hotel including room service of $41.60 on July 25, 2011 in Mobile, Alabama; $22.96 for breakfast and a sandwich on July 26, 2012 in Mobile, Alabama; and $255.76 for hotel accommodations in Houston, Texas on July 26, 2012.  However, a subsistence allowance "shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government." 28 U.S.C. § 1821(d)(2).  In July 2011, the maximum per diem rate for Mobile, Alabama was $90.00 for lodging and $51.00 for meals and incidentals for a total of $141.00.  *See* http://www.gsa.gov/portal/category/100120.  In July 2011, the maximum per diem rate for Houston, Texas was $109.00 for lodging and $71.00 for meals and incidentals for a total of

$180.00. *Id.*

Accordingly, costs are taxed in the amount of $141.00 for Alvares' subsistence in Mobile, Alabama; $180.00 for Alvares' subsistence in Houston, Texas; parking fees of $43.08 and taxi fees of $55.00; 28 U.S.C. § 1821(c)(3), for a total amount of $419.08. *Woods,* 2010 WL 4116571, at *9 (subsistence allowance should not "exceed the per diem allowance for federal employees when a witness is required to stay overnight.") (citation omitted); *See Tiara Condominium Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 1349, 1371 (S.D. Fla. 2010) (report and recommendation to allow the maximum subsistence rate per diem as established by the General Services Administration, parking, and airfare at the most economical rate) (adopted *Tiara Condominium Ass'n, Inc. v. Marsh USA, Inc.,* 2010 WL 5463326 (S.D. Fla. Dec 29, 2010)).

d. Kenneth Orloff – Travel expenses $3,435.97 and Barry Schiff - Travel expenses (doc. 390-6, p. 10-12)

Orloff and Schiff traveled more than 100 miles to attend trial.[46]  However, the Court finds that special circumstances exist in that Orloff and Schiff were expert witnesses for TCM and their testimony was relevant and necessary.  Therefore, travel expenses will be allowed as appropriate.

TCM provides an invoice from Orloff and Schiff (doc. 390-6, p. 10-12) and states that travel expense documentation for the invoices was attached as Exhibits B and C to its response (doc. 414, p. 26).  However, no documentation was attached.  Because of the lack of documentation to support the invoice and itemization, the costs of air fare, cab fare and parking

---

[46] Orloff's invoice indicates his consulting business is based in Groveland, California and Schiff's invoice indicates his consulting business is based in Camarillo, California.

are not taxed.[47]  28 U.S.C. §1821(c)(1) ("[a] receipt or other evidence of actual cost shall be furnished").

However, Orloff and Schiff appeared in this Court and logically, TCM incurred lodging and meal costs.  Since those costs are limited to a set per diem regardless of the amount actually paid and which could be verified by a receipt, the costs for lodging and meals are taxed as follows: $423.00 for Orloff's lodging and meals (the July 2011 Mobile, Alabama per diem of $141.00 for three days),[48] and $141.00 for Schiff's lodging and meals, *see supra*, as to Alvares), for a total of $564.00.

   e. John Morris- Travel expenses - $2,833.05 (doc. 390-6, p. 13; doc. 416, p. 4-5)

Morris traveled more than 100 miles to attend trial.  However, the Court finds that special circumstances exist in that Morris was one of TCM's expert witnesses and his testimony was relevant and necessary. Therefore, travel expenses will be allowed as appropriate.

Plaintiffs specifically object to taxation of costs of a rental car for Morris.  Plaintiffs argue that use of a rental car is for the convenience of the witness while Section 1821 provides for travel to the courthouse by way of common carrier.  TCM did not respond to plaintiffs' objection except to argue that all of the actual costs submitted were reasonable, allowable, and should be taxed to plaintiffs.  Neither § 1920 nor §1821 appear to authorize the cost of a rental car.  Therefore, costs in the amount of $194.26 are not taxed.

Morris' invoice shows a toll and parking expense of $124.00.  Although there is no

---

   [47] Orloff's and Schiff's invoices include air fare but do not provide sufficient information for the Court to determine whether they travelled at the most economical rate reasonably available.

   [48] Orloff's invoice indicates that he arrived on July 30, 2011 and departed on August 2, 2011 (doc. 390-6).

34

authorization for a rental car, these expenses would be allowed were Morris driving his personal vehicle. *See* 18 U.S.C. § 1821(c)(3).  However, TCM must present a valid receipt.  Therefore, costs in the amount of $124.00 are not taxed.

TCM submitted Morris' airline reservation detail which shows a ticket price of $1,740.41. However, the reservation does not indicate whether Morris traveled at the most economic rate. 28 U.S.C. 1821(c)(1) ("Such a witness shall utilize a common carrier at the most economical rate reasonably available.").  Because the documentation is not sufficient to establish that he traveled at the most economical rate for round trip travel by common carrier between San Francisco and Mobile, the cost of Morris' air travel $1,740.41 is reduced by 50% and taxed to plaintiffs in the amount of $870.20.  *Aguiar*, 2011 WL 4387180 at 2.

TCM submitted Morris' hotel receipt for $794.03 for his three-day stay in Mobile, Alabama.  In July 2011, the allowable per diem rate for Mobile was $141.00.  Therefore, costs for Morris's subsistence are taxed in the amount of $423.00 ($141.00 x three days).

f. Douglas Marwill- Travel expenses $2,005.95 (doc. 390-6, p. 14-17)

Marwill traveled more than 100 miles to attend trial.  However, the Court finds that special circumstances exist in that Marwill was one of TCM's expert witnesses and his testimony was relevant and necessary.  Therefore, travel expenses will be allowed as appropriate.

Marwill invoiced TCM for a total amount of $2,005.95.  The breakdown of expenses includes time for trial preparation.  Thus, the total amount invoiced does not reflect Marwill's travel expenses  "[T]he recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel reimbursement and a $40 per diem." *Arlington Ctr. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006).

Also, plaintiffs object to Marwill's air fare because the passenger receipts are not legible

and not sufficient documentation that Marwill traveled at the most economic rate.  The receipts show $804.00 and $681.68, but are otherwise not legible enough to determine whether Marwill traveled at "the most economic rate reasonably available" for round trip travel by common carrier between San Antonio, Texas and Mobile, Alabama. 28 U.S.C. 1821(c)(1).Because the documentation is not sufficient, the cost of Marwill's air travel $1,485.68 is reduced by 50%, and taxed at $742.84. *Aguiar*, 2011 WL 4387180, at *2.

TCM also provides a hotel receipt in the amount of $374.32 and food receipts totaling $86.03 for Marwill's two-day stay in Mobile, Alabama.  However, in July 2011, the allowable per diem rate for Mobile was $141.00.  Therefore, costs for Marwill's lodging and meals are taxed in the amount of $282.00.

g. John Barton

The cost of mileage in the amount of $14.68 is not taxed.  TCM did not provide any documentation to support this cost.

h. Sub-Total  The total cost taxed for witnesses attending trial is $5,473.16.

D. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case

TCM seeks fees for costs of "outside copies" in the amount of $25,369.92, "in-house copies" in the amount of $5,836.55, and copies made by counsel in Kentucky in the amount of $2,871.96, for a total of $34,078.43 (doc. 392-2, p. 6-10, 12).  TCM argues that copies from the Kentucky case and from the medical records providers were purchased at the rate demanded by the non-party and that these records were critical to the case.  TCM also argues that the copies were all either attributable to discovery, tendered to opposing counsel, produced to the court, or related to trial preparation, and therefore necessary for use in the case.  TCM also argues that the rates are reasonable because they were the market rates for the area where the copies were made.

Plaintiffs object that the quantity of copies (about 33,000 pages) and the average cost of over $1.00 per page are unreasonable.  Plaintiffs argue that TCM's documentation is not sufficient for the Court to determine whether the copies were necessarily obtained for use in the case or for the convenience of TCM (non-taxable).  Plaintiffs also object to copying costs for electronic copying (CD's and scanning documents), models, charts, and foam board blow-ups because these costs are not recoverable under §1920.  Plaintiffs also argue that costs should be limited to $0.10 per page for black and white copies, $0.50 per page for color copies, and limited to the 1,743 pages of exhibits that were admitted at trial for a total of $174.00.

Title 28 U.S.C. § 1920(4) provides for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" "In evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  *U.S. E.E.O.C.*, 213 F.3d at 623.  In that regard, TCM bears the burden of presenting sufficient evidence that the copies were necessarily obtained for use in the case because that is a matter within TCM's exclusive knowledge.  *Spatz*, 2012 WL 1587663, at *7 ("Because only the prevailing party knows the purpose of the copies, that party 'cannot simply make unsubstantiated claims that copies of the documents were necessary.' … [T]he prevailing party 'must provide information regarding the purpose of copies charged so the court will be able to determine the purpose of the copies as well as whether the rates paid for copies were reasonable, and whether the copies made were related to the action at issue.'") (citations omitted)  Generally, costs of black and white copies, color copies, copies of oversize documents, and photographs are allowed where they are necessary for use in the case.  *See Arcadian Fertilizer, L.P.*, 249 F. 3d at 1297; *Powell*, 2010 WL 4116488, at *14-15.  Also,"[p]hotocopies attributable to discovery, copies of pleadings, correspondence,

documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are all recoverable." *Powell*, 2010 WL 4116488, at *15; *U.S. E.E.O.C.*, 213 F.3d at 623 (" 'Copies attributable to discovery' are a category of copies recoverable under § 1920(4).") (citation omitted).

Also, 28 U.S.C. § 1920(4) was amended by Congress to exclude the phrase "copies of papers" and inserted the phrase "costs of making copies of any materials".  Thus, § 1920(4) allows taxation of costs of electronic copying.  As with all copies, TCM must show that the electronic copies were necessarily obtained for use in the case and not for convenience of counsel. *Arcadian Fertilizer, L.P.*, 249 F.3d at 1296-1297 (costs of copies of discovery, whether paper or electronic, are generally allowed as "necessary for use in the case"); *Powell*, 2010 WL 4116488, at *17 (accepting the movants' explanation of the need for electronic copies printed from a CD which "were copied for document exchange during discovery, or for use at trial"); *Powell*, 2010 WL 4116488, at *19 (not allowing costs for  "scan," "OCR," "file folder capture," "image capture," "color scanned into Email," "scanned documents," "color scanning," "electronic stamp," and "scan color" because movant "failed to meet its burden of showing that any of the electronic copies were necessarily obtained for use in the case, rather than the mere convenience of counsel").

However, costs for copies may be denied where the documentation is not sufficient for the court to determine the use or intended use of the copies. *Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (denying costs for copies because "Plaintiffs did not present required evidence regarding the documents copied including their use or intended use."); *Miller v. Kenworth of Dothan*, 117 F. Supp. 2d 1247 (M.D. Ala. 2000) (describing "generalized copying throughout file" was not sufficient to show copies were necessarily obtained for use in

the case).  Also, costs "for copies of original documents possessed by the prevailing party are not

taxable" and costs "for extra copies and for documents prepared for convenience, preparation,

research, or for the records of counsel are not taxable." *Scottsdale Ins. Co. v. Wave Technologies

Communications, Inc.*, 2012 WL 750317, *3 (M.D. Fla. Mar. 7, 2012); *Gray v. Novell, Inc.,* 2012

WL 3886026, *2 (M.D. Fla. Sept. 6, 2012); *Autry Petroleum Co. v. BP Products North America,

Inc.*, 2010 WL 3239010, *2 (M.D. Ga. Aug. 16, 2010).  Additionally, costs of physical exhibits

like charts, models, or replicas and costs of foam board blow-ups are generally not allowed.

*Arcadian Fertilizer, L.P.,* 249 F.3d at 1297 ("[P]hysical exhibits like models and charts simply

may not be taxed as costs because there is no statutory authorization.") (citing *U.S. E.E.O.C.*,

213 F. 3d at 624); *Moncus v. Johanns*, 2006 WL 1180950, *6 (M.D. Ala. May 2, 2006) ("While

the enlargements of these memoranda may have demonstrated counsel's points with increased

clarity, enlargement of the documents was not necessary within the meaning of § 1920.  The

government could have used the letter-size originals and the Elmo to achieve a similar effect.")

(citation omitted); *Powell*, 2010 WL 4116488, at *21.

   1. In-House copies

   a. Analysis

   The in-house copy invoices prepared by local counsel and counsel in Kentucky contain

only a few entries which identifies the purpose for the copies.  Most entries are simply

"Photocopies",  "Photocopies - Color copies" or CD/DVD creation. (Docs. 390-8, 390-10)  Also,

the itemizations state only "in-house copies" with few exceptions. (Doc. 392-2, p. 8-10, 12)

   Although TCM need not provide "an accounting for each photocopy", it has the burden

to provide "evidence showing the nature of the documents copied and how they were used".  *See

Dillon v. Axxsys Int'l, Inc.*, 2006 WL 3841809, *7 (M.D. Fla. Dec. 19, 2006); *Powell,* 2010 WL

4116488, at *17.  TCM's blanket statement that the in-house copies "were all either attributable to discovery, tendered to opposing counsel, produced to the court or related to trial preparation" is not sufficient for the Court to determine whether the copies identified as "Photocopies", "Color Copies" or "CD/DVD creation" were necessarily obtained for use in the case or obtained for the convenience of the party.  28 U.S.C. § 1920(4).  Therefore, costs are not taxed for in-house copies so described.

Some descriptions specify that copies were made of expert reports, depositions and records, juror questionnaires, proposed jury charges, and trial notebooks.  The majority of these costs are disallowed because the copies appear to have been made for convenience of counsel.  For example, copies were made for trial notebooks.  These costs are not taxed because trial notebooks are generally prepared for convenience of counsel and not necessarily obtained for use in the case.  *See Powell*, 2010 WL 4116488, at *16 (finding costs for creation of notebooks including binders and tabs was not taxable); *Scottsdale Ins. Co.*, 2012 WL 750317, at *3 (costs "for documents prepared for . . . preparation . . . are not taxable.")  Also, a copy of the juror questionnaires can be obtained from the Court.  TCM has not explained why additional copies were necessary for use in the case.

Although the descriptions are scant, some of the copies appear to have been necessarily obtained for use in the case as discovery, exhibits for motions, or documents provided to the Court.  Therefore, the following costs are taxed:[49]

6/10/11  Photocopies – POH for MBR exhibits for motions                    $60.00

---

[49] TCM states that the in-house copy charge for local counsel was $0.15 per page for black and white copies and $0.25 per page for color copies (doc. 414, p. 29).  Although TCM failed to provide the number of pages copied, the Court will allow costs of $0.15 per page for the in-house copies.  Kentucky counsel also invoiced at the rate of $0.15 per page (doc. 390-10).

| | | |
|---|---|---|
| 6/14/11 | Photocopies – Notebooks containing Pretrial document (requested by Judge DuBose) | $225.00 |
| 6/15/11 | Photocopies – Pretrial Notebook | $75.60 |
| 6/17/11 | Photocopies – Depo of Greg Brothers for trial [50] | $14.70 |
| 6/22/11 | Photocopies –Copies of plaintiffs' exhibits to be used in TCM's motion to exclude | $192.75 |
| 6/23/11 | Photocopies – Copies for upcoming hearing | $165.00 |
| 6/24/11 | Photocopies – Copies of TCM's 1st [motion] in limine for trial | $67.20 |
| 7/3/11 | Photocopies – Tax records | $10.65 |

As to the in-house copies made by counsel in Kentucky, the following costs are taxed:

| | | |
|---|---|---|
| 12/31/09 | Court discovery/trial document | $39.00 |
| | Total | $849.90 |

b. Sub-Total   The total in-house copy cost taxed is $849.90

2. Out-sourced copies from PLC ProLegal Copies and Source One Legal Copy, Inc

TCM provides copies of invoices from PLC ProLegal Copies and Source One Legal Copy, Inc.[51] The Court previously ascertained that $0.10 per page for letter size black and white copies and $0.99 per page for letter size color copies were reasonable rates. *See* note 29.  The Court finds that as to the out-sourced copies, these rates or a lower rate where invoiced, are

---

[50]  The Court disallowed the request for costs related to Greg Brother's deposition because the invoice did not provide sufficient information for the Court to determine what portion of the invoice was for an allowable cost. *See* pages 23-24.  However, the Court taxed the cost of one copy of depositions generally.  *See* page 14.

[51]  PLC ProLegal (doc. 390-7, p. 1-10, 12-14, 16-18, 20, 22-29, 31-34, 36-38, 41-45, 47, 50, 70, 74) and Source One Legal Copy, Inc. (doc. 390-7, p. 49-50, 57-60, 63-66, 69, 71, 73, 75-86, 88-89, 93-96).

reasonable per page rates.[52]

a. Copies not taxed

As with the in-house copies, many of the invoices and the corresponding itemizations do not provide sufficient information for the Court to determine whether the out-sourced black and white and color copies, copies of CDs or DVDs, or transfers of data to CDs or DVDs were reasonably necessary for use in the case or made for the convenience of counsel.  Also, many of the invoices were for multiple copies of the same document without sufficient explanation in the corresponding itemization for the Court to determine whether the additional copies were reasonably necessary for use in the case or obtained for convenience of counsel.  Generally, copying costs "merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only" are not recoverable."  *U.S.E.E.O.C.*, 213 F.3d at 620-621. Therefore, the following costs are not taxed:

1. Color copies and color prints of photos.

Two invoices for $44.24 each and one invoice for $761.81. The check request description on the two invoices indicates only that these are copies of color photos and the itemization reads "color copies of photos" (doc. 390-7, p. 4-5; doc. 392-2, p. 6).  The description on the invoice for $761.81 and the itemization state only "Color Copies"  (doc. 390-7, p. 69; doc. 392-2, p. 6). These descriptions are not sufficient for the Court to determine the purpose of these copies and whether they were necessary for use in the case or for the convenience of counsel.

Invoice for $106.30. The check request description on the invoice states "color prints made of photos emailed to LPC and copied to CD" and the itemization reads "color photos to

---

[52] The out-source copy providers, at times, invoiced less that $0.99 per page for letter size color copies.

42

CD" (doc. 390-7, p. 9; doc. 392-2, p. 6).  These descriptions are not sufficient for the Court to determine whether the color prints were necessarily obtained for use in the case, such as document production, or for convenience of counsel.

　　　2. Copies for consultant, expert, witness or attorney review

　　　Invoice for $69.05.  The check request description on the invoice for $69.05 indicates "photos copied for "expert review" and the itemization reads "copies of photos for consultant review" (doc. 390-7, p. 7; doc. 392-2, p. 6).  However, the expert or consultant could have reviewed the original photographs.  Thus, this cost was incurred for convenience of counsel.

　　　Invoice for $132.00.  The invoice shows that eight CD copies were provided to "Barton, _____ (unreadable) and Alvarez" and the itemization reads "CD's provided to experts" (doc. 390-7, p. 31; doc. 392-2, p. 6).  However, the description is not sufficient for the Court to determine the purpose of these CD copies and whether they were necessary for use in the case or provided for the convenience of counsel or for aid in preparation.

　　　Invoice for $289.41.  The invoice and itemization indicate that copies of medical records were made and sent to TCM's consultant or expert for review (doc. 390-7, p. 29; doc. 392-2, p. 6).  However, the consultant or expert could have reviewed the copies of the medical records already obtained from the medical records providers.

　　　Invoice for $22.24, invoice for $16.35, and invoice for $333.19.  The check request description on the invoice for $22.24 states "copies made for consultant review" as does the itemization (doc. 390-7, p. 13; doc. 392-2, p. 6).  The check request description on the invoice for $16.35 and the itemization indicate that a "copy" of a CD was made for a consultant to review documents (doc. 390-7, p. 18; doc. 392-2, p. 6).  The check request description on the invoice for $333.19 and the itemization indicate that copies of photographs were printed from a

CD for "consultant review" (doc. 390-7, p. 17; 392-2, p. 6). The descriptions are not sufficient for the court to determine whether the copies were necessary for use in the case or for the convenience of counsel for the consultant to have a set of copies.

Invoice for $32.64. The check request description on the invoice indicates that these copies were made of a deposition transcript (doc. 390-7, p. 12). The itemization reads "copy of deposition for witness review" (doc. 392-2, p. 6). The specific deposition transcript is not identified nor is the witness. Costs have already been taxed for one copy of the deposition transcripts as requested by TCM. Therefore, the description is not sufficient for the Court to determine whether costs for a second copy of any deposition should be taxed.

Invoice for $20.95. The check request description on the invoice and the itemization indicate that these documents were copied for attorney review (doc. 390-7, p. 20; doc. 392-2, p. 6). However, this description is not sufficient for the Court to determine what documents were copied, the purpose, and whether the copies were necessary for use in the case or for the convenience of counsel. "[D]ocuments prepared for . . . the records of counsel are not taxable." *Scottsdale Ins. Co.*, 2012 WL 750317, *3 (citation omitted).

Invoice for $81.75. The check request description on the invoice indicates that "discovery CD's" were copied to "forward to other counsel" and the itemization states "copies of CD's with discovery" (doc. 390-7, p. 1; doc. 392-2, p. 6). Maintaining one copy of discovery may be reasonably necessary for use in the case but the purpose of making five copies to forward to "other counsel" is not clear. *See Pickett*, 2004 WL 3712721, *6 (Plaintiffs produced these exhibits to defendant in a CD–ROM format, and defendant chose to print three hard copies of each of those exhibits. [ ] Although it was reasonable for defense counsel to print one copy of each trial exhibit, the Court finds that the two additional copies were printed for the defendant's

convenience and the costs associated with the extra copies is therefore not taxable.")

3. Copying or scanning to CDs or DVDs

Invoice for $162.61. The description on the invoice reads "Crouch" (doc. 390-7, p. 47) and the itemization reads "document scanning" (doc. 392-2, p. 6).  These statements are not sufficient information for the court to determine whether the documents scanned were necessary for use in the case or for another purpose that is not taxable.

Invoices for $276.21; $283.20, $420.20, $96.97, $70.46, $234.69,  $583.88, $316.91, $410.85, and $81.40.   The description on the invoices reads "B&W Document Scans", "Color Document Scans" and "Transfer Data to CD" or "Transfer Data to DVD." (doc. 390-7, p. 77-85, 96).  The itemization reads "color scan docs" (doc. 392-2, p. 7) or  "color scan – trial prep", "trial/hearing prep",  "scan docs –trial prep", "trial prep"; "scan documents for trial" (doc. 392-2, p. 7).  However, the information is not sufficient for the Court to determine whether scanning and transferring these documents to a CD for trial or hearing preparation was reasonably necessary for use in the case.  Generally, costs for copies "to aid in thorough preparation . . . are not recoverable." *U.S.E.E.O.C.*, 213 F.3d at 620-621; *see also Scottsdale Ins. Co.,* 2012 WL 750317, at *3; *Gray,* 2012 WL 3886026, at *2; *Autry Petroleum Co.*, 2010 WL 3239010, at *2.

4. Copies of depositions and exhibits

Invoice for $198.09.  There is no description on the invoice but the itemization reads "Copy of disk of Seader depo and exhibits" (doc. 390-7, p. 50; doc. 392-2, p. 6).  Costs in the amount of $1,137.00 have already been taxed for an original and one copy of Seader's deposition (*see*, p. 22)  TCM is not entitled to costs for additional copies.  Since the invoice does not break down which of the 742 pages copied were copies of the deposition as opposed to deposition exhibits, costs are not taxed.  Also, costs for binders and tabs are not taxed. *See Powell*, 2010

WL 4116488, at *16 (finding costs for creation of notebooks including binders and tabs was not taxable).

Invoice for $108.90. The description on the invoice reads "19 x 13 glossy prints" and the itemization reads "large color photos to be used as exhibits" (doc. 390-7, p. 70; doc. 392-2, p. 7). However, other than the generic "exhibits", the itemization does not explain the purpose of these prints. Therefore, the information is not sufficient for the Court to determine whether the glossy prints were necessary for use in the case or for the convenience of counsel.

Invoice for $1,216.88 and $878.57. The description on the invoice for $1,216.88 reads "B&W copies" and "Color Copies" and the itemization reads "Plaintiffs exhibits" (doc. 390-7, p. 75; doc. 392-2, p. 7). The description on the invoice for $878.57 reads "Color copies" and the itemization reads "Color copies – exhibits" (doc. 390-7, p. 73; doc. 392-2, p. 7). Although the copies are identified as "exhibits" or "plaintiff's exhibits", that is not sufficient for the court to determine the purpose of these exhibits and whether copies were necessary for use in the case or extra copies made for convenience of counsel.

5. Miscellaneous copies

Invoice for $14.82, $17.86, and $125.40. The check request description on the invoice for $14.82 indicates "copy fee – documents" and the itemization reads "copies" (doc. 390-7, p. 8; doc. 392-2, p. 6). The description on the invoice for $17.86 shows that two copies of a Power Point "Areas of Examination of Airframe and Exhaust" were invoiced and the itemization reads "copies of Power Point" (doc. 390-7, p. 32; doc. 392-2, p. 6). The description on the invoice for $125.40 reads only "B&W Copies" and the itemization reads "B&W Copies Manual"[53] (doc. 390-7, p. 58; doc. 392-2, p. 6). These descriptions are not sufficient for the Court to determine

---

[53] Costs are taxed for one copy of the engine manual. *See*, p. 49.

the purpose of these copies and how they were used or intended to be used in the case.

Invoices for $42.78, $19.95, $25.73, and $62.40.  The descriptions on the invoices do not contain any reference to a specific exhibit or deposition but instead state only "Electronic Stamps" or "B&W Copies" or "Transfer data to CD" (doc. 390-7, p. 64-66).  The description on the invoice for $62.40 reads only "B&W Copies" and the itemization reads "copies of documents from disk"  (doc. 390-7, p. 59; doc. 392-2, p. 6).  The information is not sufficient for the court to determine whether these copies were necessary for use in the case, such as exchange of documents, or were made for the convenience of counsel.  Additionally, costs associated with electronic numbering or stamping are not recoverable.  *Hernandez v. Wilsonart Intern., Inc*. 2011 WL 7092657, *5 (M.D. Fla.  Dec. 30, 2011) ("The Bates stamp labels are not covered costs under § 1920. . . . Therefore, the Bates labels will be disallowed.") (citing *Durden,* 2010 WL 2105921, at *4.

6.  Color trial exhibits (36" x 48")

TCM also seeks to recover costs for 36" x 48" "color trial exhibits" and color copies in the amount of $2,967.14.[54] The itemization identifies these as "color copies of trial exhibits" or "blow ups" or "blow of exhibit 582" (doc. 392-2, p. 7).  Generally, costs of physical exhibits such as foam board blow-ups are not allowed and the ELMO system can be used at trial. *Arcadian Fertilizer, L.P.,* 249 F.3d at 1297 ("This means that in this circuit, physical exhibits like models and charts simply may not be taxed as costs because there is no statutory authorization.") (citing *U.S. E.E.O.C.*, 213 F. 3d at 624); *Moncus*, 2006 WL 1180950, at *6 ("While the enlargements of these memoranda may have demonstrated counsel's points with

---

[54] Doc. 390-7, pp. 74 ($93.50), 86 ($54.45), 88($70.95), 89 ($490.05) 93 ($99.00), 94($2,021.69), 95 ($137.50.

increased clarity, enlargement of the documents was not necessary within the meaning of § 1920. The government could have used the letter-size originals and the Elmo to achieve a similar effect.") (citation omitted);*Powell*, 2010 WL 4116488, at \*21; *In re Scientific-Atlanta, Inc. Securities Litigation*, 2011 WL 2671296, at \*1 (N.D. Ga. July 6, 2011).

     b. <u>Out-sourced copies are taxed or taxed in part</u>:

Invoice for $1,125.78.  The check request description on the invoice indicates that a copy of discovery from the Kentucky case was sent to TCM on a CD and then the copies were printed from the CD (doc. 390-7, p. 2).  One copy of discovery from the Kentucky case would be reasonably necessary for use in this case. Therefore, costs are taxed in the amount of $1,125.78.

Invoice for $13.73.  The check request description on the invoice indicates that this cost was incurred for "printing discovery docs from disc" (doc. 390-7, p. 3).  The parties exchanged discovery by way of exchange of CD's. Thus, documents printed from a disc were reasonably necessary for use in the case. Therefore, costs are taxed in the amount of $13.73.

Invoice for $85.94.  The check request description on the invoice indicates that these copies were to be used at depositions (doc. 390-7, p. 6).  The itemization reads "copies of documents to be used at depositions" (doc. 392-2, p. 6). Although specific depositions are not identified, many depositions were taken in this action. Therefore, costs are taxed in the amount of $85.94.

Invoice for $15.10.  The check request states that the color photos were of the "mishap gasket in various stages of inspection" (doc. 390-7, p. 10).  The itemization reads "color photos of accident gasket" (doc. 392-2, p. 6).  The description is sufficient for the court to determine that these copies were necessarily obtained for use in the case.  Therefore, costs are taxed in the amount of $15.10.

Invoice for $242.30, taxed in part ($87.45). The check request description on the invoice and the itemization indicate that copies were made of the engine manual and that extra copies were made for counsel and the expert witness (doc. 390-7, p. 14; doc. 392-2, p. 6). Costs for one copy of the engine manual are taxed. Costs of additional copies are not taxed because the description is not sufficient for the Court to determine whether additional copies of the engine manual were necessary for use in the case or were made for the convenience of counsel. Therefore, costs are taxed in the amount of $87.45.

Invoice for $208.26. The check request description on the invoice indicates that these copies of medical records were scanned to a CD for document production (doc. 390-7, p. 16). The itemization states "scan medical records to CD to produce to plaintiffs" (doc. 392-2, p. 6). The parties exchanged documents by way of CD. Electronic copying appears to be necessary for use in the case, i.e., the production of documents for discovery. Therefore, costs are taxed in the amount of $208.26.

Invoice for $66.53. The check request description on the invoice and the itemization indicate that medical records were copied onto a CD and forwarded to plaintiffs' counsel (doc. 390-7, p. 22; doc. 392-2, p.6). The parties exchanged documents by way of CDs and copying the medical records onto a CD was necessary for use in the case. Therefore, costs are taxed in the amount of $66.53.

Invoice for $25.96. The check request description on the invoice and the itemization indicate that there were copies made of "John Barton docs" (doc. 390-7, p. 23; doc. 392-2, p.6). Barton was one of TCM's expert witnesses and documents related to his testimony would have been necessary for use in the case and likely for production to plaintiffs. Therefore, costs are taxed in the amount of $25.96.

Invoice for $99.00. The check request description on the invoice and the itemization indicate that six CD's were made for "document production to CD Ward & Barton" (doc. 390-7, p. 24; doc. 392-2, p. 6).  The parties exchanged discovery by way of CDs and copying the documents onto a CD for document production was necessary for use in the case. Therefore, costs are taxed in the amount of $99.00.

Invoice for $38.90. The check request description on the invoice and the itemization indicate that copies of "Mike Ward" documents were scanned to a CD for "document production" (doc. 390-7, p. 25; doc. 392-2, p.6). The parties exchanged discovery documents by way of CDs and copying the documents onto a CD for document production was necessary for use in the case. Therefore, costs are taxed in the amount of $38.90.

Invoice for $424.94.  The invoice shows that color copies were made "from CD provided by Steve Ginger" (doc. 390-7, p. 26).  The itemization explains that that these were color photos of the "wreckage inspection" (doc. 392-2).  Printing these color copies was necessary for use in the case.  Therefore, costs are taxed in the amount of $424.94.

Invoice for $30.50.  The invoice shows that these color copies were "photos for deposition exhibits" and the itemization reads "photos to be used as deposition exhibits" (doc. 390-7, p. 27; doc. 392-2, p. 6).  Although the specific deposition is not identified, the parties noticed many depositions.  The Court has previously determined that copies of deposition exhibits were necessary in order to obtain a complete and accurate version of the deposition. *See supra* p. 17.  These color copies were necessary for use in the case. Therefore, costs are taxed in the amount of $30.50.

Invoice for $16.50. The invoice shows that this CD was made for "doc production to [plaintiff]" (doc. 390-7, p. 28).  The itemization indicates that this CD was a copy of documents

produced from the plaintiffs (doc. 392-2, p. 6).  However, the parties exchanged discovery documents by way of CDs and copying a CD for production to plaintiffs was necessary for use in the case. Therefore, costs are taxed in the amount of $16.50.

Invoice for $134.31, taxed in part ($114.34).  The invoice and itemization indicate that color copies were made of John Barton's photos of the August 26, 2010 inspection (doc. 390-7, p. 34; doc. 392-2, p. 6).  The inspection was part of discovery.  A copy of the inspection photos would have been necessary for use in the case.  However, costs for one extra copy of the CD are not taxed. Therefore, costs are taxed in the amount of $114.34.

Invoice for $16.50.  The invoice and itemization show that the CD was a "copy of voice recordings for expert Schiff" (doc. 390-7, p. 36; doc. 392-2, p. 6).  Schiff testified as an expert on behalf of TCM at trial and his expert opinion was used on summary judgment.  Thus, the voice recording was necessary for use in the case.  Therefore, costs are taxed in the amount of $16.50.

Invoice for $296.13, taxed in part ($147.63).  The invoice and itemization indicate that documents were produced to plaintiffs' counsel for six witnesses of which four were identified as experts by TCM (doc. 390-7, p. 38; doc. 392-2, p. 6).  The parties exchanged discovery documents by way of CD's.  Thus, this discovery was necessary for use in the case.  However, costs are awarded only as to the original and one CD copy.  Costs for nine additional CD copies are not taxed.  Therefore, costs are taxed in the amount of $147.63.

Invoice for $130.07.  The description on the invoice reads "Scanning . . . response to Jewel's 1st RFP in the KY litigation" (doc. 390-7, p. 41).  The itemization reads substantially the same (doc. 392-2, p. 6). As part of discovery, CDs produced in response to a request for production were necessary for use in the case.  Therefore, costs are taxed in the amount of $130.07.

Invoice for $291.35.  The description on the invoice reads "Scanning . . . for production (oversized dwgs)[55] (doc. 390-7, p. 42).  The itemization reads "Scan TCM Production 0172-1782" (doc. 392-2, p. 6).  These documents appear to have been scanned to a CD as part of discovery production and thus were necessary for use in the case.  Therefore, costs are taxed in the amount of $291.35.

Invoice for $55.88.  The description on the invoice reads "Printing medical records produced in the KY litigation that we did not have copies of" (doc. 390-7, p. 43).  The itemization reads "print plaintiffs' medical records" (doc. 392-2, p. 6).  These documents were produced as part of discovery and thus were necessary for use in the case.  Therefore, costs are taxed in the amount of $55.88.

Invoice for $24.76.  The description on the invoice reads "Printing docs from CD-Exhibits to George Durham dep" (doc. 390-7, p. 45).  The itemization identifies these documents as the exhibits to Durham's deposition (doc. 392-2, p. 6).  The Court has previously determined that copies of deposition exhibits were necessary in order to obtain a complete and accurate version of the deposition.  *See supra* p. 17.  Therefore, costs are taxed in the amount of $24.76. [56]

Invoice for $703.78.  The description on the invoice reads "B&W Copies" and "Color copying" (doc. 390-7, p. 60).  The itemization reads "copies of documents for expert disclosures" (doc. 392-2, p. 6).  Although the description does not identify which experts' disclosures were

---

[55] *Arcadian Fertilizer, LP*, 249 F. 3d at 1295-1296 (finding that costs for trial exhibits composed of oversized documents and color photographs are recoverable where necessarily obtained for use in the case).  These oversized drawings were produced during discovery and at a cost of $.70 per page which is below the $.99 per page the court has found reasonable for color copies.

[56] Durham's deposition testimony was used in support of and in response to the parties' motions for summary judgment. (Docs. 68, 85, 199, 217)

copied, the Court is aware that both parties retained several expert witnesses.  Therefore, it appears that these copies were necessary for use in the case.  Costs in the amount of $703.78 are taxed.

Invoice for $107.36, taxed in part ($36.30).  The description on the invoice reads "B&W Copies", "B&W Document Scans" and "Transfer data to CD" (doc. 390-7, p. 63).  The itemization reads "copy and scan Lycoming documents" (doc. 392-2, p. 6).  The Lycoming Parts Catalog and Lycoming Service Instructions were used as an exhibit to TCM's motion to exclude expert testimony (doc. 240) and TCM's motion for summary judgment and reply (docs. 136, 203).  Therefore, costs are taxed for the black and white copies in the amount of $36.30.  However, costs are not taxed for scanning the documents and making two CD copies.  TCM is entitled to costs for one copy as reasonable and necessary for use in the case.  Additional copies are for the convenience of counsel.

Invoice for $2,103.45.  TCM seeks costs for 4,515 black and white copies, 1,248 color copies, 457 tabs, and fifteen three ring binders (doc. 290-7, p. 93, invoice).  The itemization reads "Copies of trial exhibits" (doc. 392-2, p. 7).  The Court requested a daily binder of exhibits which might be admitted into evidence. [57]  Therefore, costs in the amount of $2,103.45 are taxed.

c. <u>Sub-total</u>   The total out-sourced copy costs taxed is $5,882.44.

3. <u>Other copies</u>

a. <u>Invoice from Orloff Consulting</u>

The description on the invoice from Orloff Consulting reads "FOIA request N3887M" invoiced at $306.72 and $6.13 for "Phone/Fax for October" (doc. 390-7, p. 44).  The itemization reads "Orloff FOIA request from FAA" (doc. 392-2, p. 6).  Kenneth Orloff was as an expert

---

[57]  The cost of $99.00 for a "color trial exhibit" is addressed in that section.

witness for TCM.  However, the information is insufficient to determine for what the expense

was incurred, i.e. whether for copies or review of documents, and thus insufficient to determine

whether the expense was necessarily incurred for use in the case.  As to the telephone and fax

costs, the 11th Circuit has held that telephone charges are allowable to the extent they are

reasonable.  *Cullens v. Georgia Dept. of Transp.*  29 F.3d 1489, 1494 (11th Cir. 1994).  Since

Orloff was one of TCM's experts and he was based in California, the Court finds the telephone

and fax cost to be reasonable.  Therefore, costs are taxed in the amount of $6.13.

     b. <u>Invoice from LoPresti Aviation</u>

     TCM provides a copy of the invoice from LoPresti Aviation (doc. 390-7, p. 35).  The

invoice states "Charges for documentation requested . . ." and "6 Hours at $125/hour  $750.00"

On the itemization, TCM seeks "payment to LoPresti for docs produced" (doc. 392-2, p. 6).

These costs are not taxed.  The invoice and itemization do not contain sufficient information for

the Court to determine whether document copies were produced or whether a service was

performed at an hourly rate.

     TCM provides a copy of a check paid to LoPresti Aviation in the amount of $382.60

(doc. 390-7, p. 62).  The check stub reads "documents produced" and the itemization reads

"LoPresti documents produced" (doc. 392-2, p. 6).  TCM served LoPresti with a subpoena. *See*

p. 7 (doc. 390-9, p 5, invoice for service).  Costs of copies obtained as part of discovery are

recoverable. *U.S. E.E.O.C.*, 213 F.3d at 623 (" 'Copies attributable to discovery' are a category

of copies recoverable under § 1920(4).") (citation omitted); *Charles v. Home Depot,* 2011 WL

1327341, *3 (S.D. Fla. Mar. 17, 2011) (finding that costs of copies of medical records produced

pursuant to a subpoena duces tecum were "permitted under the statute" and necessarily obtained

for use in the case); *Blickley v. Ford,*  2011 WL 1376102, *6 (M.D. Fla. Mar. 22, 2011)

("Defendant has demonstrated that the copies at issue relate to discovery requests properly served pursuant to a subpoena" to a non-party).  Therefore, costs are taxed in the amount of $382.60.

TCM provides an invoice in the amount of $332.07 from Source One Legal Copy, Inc. for "Bates Labels", "Confidential Stamp", scanning, and transferring LoPresti documents to a disk (doc. 390-7, p. 57; doc. 392-2, p. 6).  Generally, costs of Bates labeling or stamping are not taxed.  *See Hernandez,* 2011 WL 7092657, at *5 ("The Bates stamp labels are not covered costs under § 1920. . . . Therefore, the Bates labels will be disallowed.") (citing *Durden v. Citicorp Trust Bank, FSB,* 2010 WL 2105921, * 4 (M.D. Fla. Apr. 26, 2010)).  Also, TCM obtained copies of these documents from LoPresti but did not provide the Court with sufficient information as to why TCM would need additional copies of the documents scanned and transferred to a CD.  *Powell*, 2010 WL 4116488, at *19 (not allowing costs for . . . "scanned documents," . . . "electronic stamp," and "scan color" because movant "failed to meet its burden of showing that any of the electronic copies were necessarily obtained for use in the case, rather than the mere convenience of counsel").  Therefore, these costs are not taxed.

c.  Copies obtained from medical records providers

TCM provides a copy of the invoices from medical records providers for copies of Crouch and Hudson's medical records.  Costs paid to the medical records providers for copies of medical records are taxed in the amount of $2,356.80.[58]  The medical records were necessary

---

[58] Costs of shipping, handling or mailing the records are not taxed.  The cost breakdown: $739.00 - Health Information Services (doc. 390-7, p. 11) (Larry Crouch); $10.00 - University Physicians Associates (doc. 390-7, p. 15);  $339.00 and $15.00 certification fee -Health Port (Lourdes Hospital) (doc. 390-7, p. 19); $15.00 - OrthoTrauma Assoc., P.S.C. (Dr. Seligson) (doc. 390-7, p. 21);  $1,110.00 - ProTec Solutions (doc. 390-7, p. 30) (Teddy Hudson); and $128.80 - University of Louisville Diagnostic Imaging Department (doc. 390-7, p. 39-40) (costs are taxed (Continued)

and relevant to the issues of liability and damages and TCM had to pay the costs demanded by the non-party medical records providers in order to obtain the records. *See Lovett v. KLLM, Inc.*, 2007 WL 983192, *6 (N.D. Ga. Mar. 26, 2007) (taxing costs of copying medical records and explaining that "[a]lthough the $575 fee incurred in obtaining Mrs. Ringer's records from the Cartersville Medical Center may seem unreasonable to the plaintiffs, it is what the defendants were charged and so that is the cost to be taxed" and that "the records for Nancy Lovett and Robert Ringer were necessary because both claimed personal injury damages.").

 d. <u>McSwain Engineering, Inc.</u>

 TCM provides a copy of a "Laboratory Data Documentation Quote" with a cost for "Microscope Digital photodocumentation, MDP 609-626" (doc. 390-7, p. 46, 67). In the itemization, TCM clarifies that it seeks $4.50 for digital photos (doc. 392-2, p. 6).  McSwain Engineering, Inc. was subject to a *subpoena duces tecum* for document production. Therefore, costs are taxed in the amount of $4.50.

 TCM provides a copy of an invoice from McSwain Engineering, Inc., in the amount of $1,251.45 for "exhibits requested at the deposition of William D. Carden" and "reproduction of file materials" (doc. 390-7, p. 67).  These copies are itemized as "reproduction of McSwain Engineering file materials" (doc. 392-2, p. 7).  Carden was one of plaintiffs' expert witnesses and he signed the McSwain Engineering Materials Report (doc. 85-1; doc. 245-8). TCM noticed Carden's deposition and included a *subpoena duces tecum* for production of his file (docs. 103, 102, 81).  Thus, the photocopies of the McSwain Engineering file are part of discovery and the

---

for one set of films on two CD's for Crouch and Hudson, costs for an "additional set" are not taxed).

costs are recoverable. *U.S. E.E.O.C.*, 213 F.3d at 623 (" 'Copies attributable to discovery' are a category of copies recoverable under § 1920(4).") (citation omitted); *Charles,* 2011 WL 1327341, at *3; *Blickley,* 2011 WL 1376102, at *6.  Therefore, costs are taxed in the amount of $1,251.45.

TCM provides an invoice from Source One Legal Copy, Inc. in the amount of $1,077.40 for color copies of 1,031 "McSwain Engineering photos to be used as exhibits" (docs. 390-7, p. 71; doc. 392-2, p. 7).  This information is not sufficient for the Court to determine whether the copies were trial exhibits, exhibits for motions, or deposition exhibits, and thus not sufficient for the Court to determine whether the color copies were necessary for use in the case or whether they were duplications of the McSwain Engineering file production. Therefore, these costs are not taxed

### e. Mike Newton, Sheriff of Nelson County, Kentucky

TCM provides a "Statement of Process Costs" in the amount of $10.00 and described as "Subpoena (Charge for Service)" (doc. 390-7, p. 48).  TCM itemized "copy of records from Nelson County Sheriff" (doc. 392-2, p. 6).  Comparing the two, it is not clear that the statement was for copies of records since the statement itself does not mention records of any kind. Therefore, this cost is not taxed.

### f. NTSB Reports

TCM presents seven invoices from General Microfilm for "NTSB Blue Ribbon Report" (doc. 390-7, p. 51-56, 68; doc. 392-2, p.6).  Review indicates that TCM obtained copies of documents and color photos related to the National Transportation Safety Board's investigation of airplane crashes other than the crash at issue in this action.  Generally, TCM's description in the itemization – "NTSB Blue Ribbon Report" - does not provide the Court with sufficient

information to determine whether copies of these reports were necessary for use in the case. However, the Court referenced two reports in its order on summary judgment (doc. 202, p. 3).[59] Therefore, obtaining copies of these two reports may have been reasonably necessary for use in the case and costs are taxed in the total amount of $304.40 (*see* doc. 390-7, p. 52, 56).

TCM also itemizes copy costs in the amount of $98.95 for "copies of NTSB report" (doc. 392-2, p. 7; doc. 390-7, p. 76, invoice from Source One Legal Copy, Inc.). However, this information is not sufficient for the Court to determine whether the additional copies were necessary for use in the case or were extra copies made for the convenience of counsel. Therefore, these costs are not taxed.

g. Federal Aviation Administration

TCM provides an invoice from the Federal Aviation Administration for "Photocopies", "CPU Search/Operator Time", and "Computer Tapes/Printouts" (doc. 390-7, p. 61). The itemization reads "Records /CD from FOIA FAA request" (doc. 392-2, p. 6). FAA documents were used as exhibits at summary judgment and at trial. Therefore, costs in the amount of $131.50 are taxed.[60]

The invoice from ProLegal Copies, Inc. and the itemization indicate that copies of the FAA response were printed, scanned, and copied to four CD's and sent to TCM's experts (doc. 390-7, p. 33). However, these costs are not taxed in that the extra copies were made for convenience of counsel.

---

[59] *See also* Plaintiffs' Exhibit A, William Carden's report wherein he referred to the August 2003 and August 2006 NTSB Reports (doc. 85).

[60] The invoice does not indicate the number of pages in the FAA response (doc. 390-7, p. 33). However, the invoice from the copy provider shows 49 color copies and 271 black and white copies were made of the response. Thus, the response arguably contained at least 271 pages. Therefore, the FAA's invoice of $131.50 for research and copying is reasonable.

h. Aircraft Technical Book Company

The invoice from Aircraft Technical Book Company in the amount of $67.67 indicates that two items were purchased: Acceptable Methods and Acceptable Methods –EBOOK FAA (doc. 390-7, p. 72).  The itemization reads: "Order copy of Acceptable Methods, Techniques & Practices of Aircraft Inspection and Repair" (doc. 392-2, p. 7). This cost is not taxed. Costs for "documents prepared for . . . research" are not taxable.  *Scottsdale Ins. Co.,* 2012 WL 750317, at *3; *Gray,* 2012 WL 3886026, at *2; *Autry Petroleum Co.*, 2010 WL 3239010, at *2.

i. Models

TCM seeks to recover $20.34, the costs of four "Hanger 9 Logo Balsa Wood Glider" toy airplanes (doc. 390-7, p. 87).  On the invoice, the following phrase was written "Exhibit exemplar for Barry Schiff". (*Id*.)  However, costs of physical exhibits like models are not allowed.  *Arcadian Fertilizer, L.P.,* 249 F.3d at 1297 ("This means that in this circuit, physical exhibits like models and charts simply may not be taxed as costs because there is no statutory authorization.") (citing *U.S. E.E.O.C.*, 213 F. 3d at 624); *Powell*, 2010 WL 4116488, at *21. Therefore, this cost is not taxed.

j. Sub-Total    The total costs of other copies taxed is $4,437.38.

E. Plaintiffs' ability to pay

Plaintiffs object to the entire cost bill on basis that they are unable to pay these costs. Plaintiffs assert that they have lost their ability to earn money, require substantial assistance in daily tasks, and that any income they are able to generate will likely be used to pay future medical bills.  TCM responds that if the Court decides to consider plaintiffs' financial status, it should have substantial documentation of true inability to pay, but plaintiffs have not provided any documentation and instead, appeal to sympathy.

The Court may consider the financial status of a non-prevailing party. *Chapman,* 229 F.3d at 1038. "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay." *Id.* at 1039 (citation omitted) Plaintiffs have not provided any documentation to support their argument that they are financially unable to pay the costs.  Thus, the presumption under Rule 54(d) that costs should be allowed to the prevailing party has not been rebutted.

III. Conclusion

For the reasons set forth herein, costs are taxed in the total amount of $35,499.48.

**DONE** and **ORDERED** this the 17th day of January, 2013.

 **s / Kristi K. DuBose**
**KRISTI K.  DuBOSE**
**UNITED STATES DISTRICT JUDGE**